152 So. 29

## DICKINSON v. STATE.
### 6 Div. 323.

Supreme Court of Alabama.
Jan. 11, 1934.

Ernest B. Fite, of Hamilton, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

FOSTER, Justice.

The defendant was convicted of murder in the second degree. He pleaded not guilty, and not guilty by reason of insanity.

The evidence for the state tended to show that at a country church, after night services, defendant stuck a knife blade into the heart of deceased, without justification, and caused immediate death. The motive appeared to be that on the way to the church deceased had driven by defendant, who was walking, and did not stop the wagon, which was already fully loaded, to take on him and his companions. There was evidence that defendant and his companions were drinking, and the theory is that he became peeved with deceased, and for that reason made an unprovoked attack upon him. Defendant also claimed the benefit of those principles of law which prescribe the influence of voluntary drunkenness in fixing the degree of unlawful homicide.

There was evidence offered by defendant from which insanity could have been found by the jury to have afflicted defendant.

The court very carefully and accurately charged the jury in respect to the law of voluntary drunkenness and insanity as affecting responsibility for homicide which was otherwise unlawful.

In order to prove insanity, we do not find in the record where defendant undertook to resort to the improper method of proving it by reputation, or community discussions. But the state, on cross-examination of George Price, a witness for defendant, brought out the fact that he had heard of such talk before the date of the homicide. This, in a measure, also occurred on the cross-examination of the defendant's witness Joe Adams. On the cross-examination of D. W. Dickinson, a witness for defendant, the state brought out the fact that he had not heard there was anything wrong with defendant before the witness moved from that community.

The direct evidence for defendant showed a conversation between Mrs. Hunt, a witness for him, and defendant's father, and between her and her husband, for whom defendant had been employed as a farm hand, as to his mental unsoundness, all before the homicide, and one between Tucker and defendant's mother; but no evidence of general discussions in the community which related to his mental condition. Defendant's father also testified to the conversation with Mrs. Hunt, but said he did not believe he ever talked to Mr. Tucker, another state's witness, about the mental condition of the boy, but that he might have said a time or two that the boy was not right.

In this state of the evidence, the solicitor proved (first) by the preacher, who conducted the service that night, that he had been living ten or eleven miles of defendant for two or three years, during which time he had been conducting meetings at the church, of which he was pastor, and they were attended by defendant regularly, but he never visited in their home, and that he had not observed any mental unsoundness. He then was permitted to prove, over the objection and exception of defendant, that before the killing he never heard any discussion in the community of the mental unsoundness of defendant. The state was also permitted to prove by another witness, Vencit Webb, who lived near defendant in the same community, that he had never known of his family, his father or mother, or any of them, saying anything about defendant's mind not being right prior to the homicide. He was also allowed to prove by another witness, John Miller, who lived in the same community, and had associated with them to a large extent, that he never heard the father, or mother, of defendant, or any of his family, claim that there was anything

wrong with his mind prior to the homicide. The same occurred in the examination of the state's witness Banks Markham, who worked on the farm for Mr. Hunt at the time when defendant was employed there.

■ There was proper and separate objection to each such bit of evidence, which was overruled, and exception reserved to the ruling of the court. When the objection was first made, the record shows that the solicitor stated as excuse for offering the proof that defendant had gone into that question. Such justification is likewise here argued by the Attorney General. But the Attorney General does not show, and we have not observed, that the defendant made any proof which justifies such evidence as in the nature of rebuttal, unless it is that to which we have referred. It is not claimed that it is impeaching evidence of the father, mother, or brothers who testified. There was no effort to contradict or dispute the alleged conversation between Mrs. Hunt and the father of defendant, or what he may have said to the witness Tucker. The state cannot make its own setting for the justification of illegal evidence, so as to permit the contradiction of what it brought out, though on cross-examination of witnesses for defendant.

The fact that members of the family have not discussed such intimate conditions does not tend to impeach their existence. Those are conditions which would ordinarily be withheld from all discussion, rather than to make them general.

■ While it is our duty to sustain the verdict of a jury, though illegal evidence is admitted, if we think that it did not probably injuriously affect the substantial rights of defendant (rule 45), it is our judgment that, if the evidence we have mentioned is illegal, it had a tendency to influence the verdict, and we cannot say that it probably did not. It was emphasized on account of its repetition, and still further by the ruling of the court that it was not illegal. Thereby its weight was added to itself over and over again. When calmly and accurately considered, a juror might conclude that such evidence, negative in character, is of little weight, since the family will not ordinarily discuss those matters, but, when the court says it is of some weight and is proper for consideration, such reflections of the juror may not be presumed.

■ We have not found an authority which states directly that evidence such as that is not admissible to rebut that which tends to prove insanity, and given by the father, mother, or other members of the family. But it is a very well-settled rule that insanity cannot be proven by reputation, notoriety, or hearsay. Parrish v. State, 139 Ala. 16, 44, 36 So. 1012; People v. Koerner, 154 N. Y. 355, 370, 48 N. E. 730; 22 C. J. 173, § 107. It would seem to follow that sanity is not

provable by that sort of evidence, nor that it is admissible to contradict evidence of insanity, or for any other purpose, when it is not sufficient to be impeaching, nor in rebuttal.

It follows that the rulings show reversible error for which the judgment must be reversed, and the cause remanded.

No other questions need consideration, since they will not likely occur in the same form on another trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.