52 So.2d 826

## COX v. STATE.

### 6 Div. 133.

Court of Appeals of Alabama.
May 29, 1951.

No attorney marked, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

PRICE, Judge.

The indictment in this case contained 2 counts. Count 1 charging that appellant assaulted Robert Saye with the felonious intent to rob him, and count 2, that appellant and Billie Joe Ramsey conspired together to unlawfully and feloniously assault and beat Robert Saye with the intent to rob him, etc.

Count one was nol prossed. The defendant interposed a plea of not guilty and not guilty by reason of insanity to count 2. The jury found the defendant guilty of a conspiracy as charged in the indictment, and the court fixed his punishment at 5 years imprisonment in the penitentiary.

The statement of facts set out in the Attorney General's brief state fairly the salient facts adduced upon the trial. We quote from said statement of facts:

"One Billy Joe Ramsey, a coconspirator, testified for the State that he and the appellant planned to rob one Robert Saye; that appellant was to engage Saye in conversation, lead him away from his home to where Ramsey was to lie in wait to beat and rob Saye. He testified that on the night before the actual assault appellant went to Saye's home, began talking to him; and that Ramsey, in attempting to take his place alongside the road near Saye's home, turned his ankle, which necessitated his giving up the venture for that evening. He further testified that after turning his ankle, he approached Saye and the appellant thereby signaling the appellant that their intended robbery would not take place that night. The witness further testified that the following evening appellant went to Saye's home as planned, called Saye out to his car and engaged him in conversation, and after some conversation, appellant asked Saye to accompany him down the road on foot a short distance through a small patch of woods. As they went past the spot where

Ramsey was hiding, Ramsey jumped up and hit Saye on the head several times with a sock filled with sand. Saye shouted for his sister to bring his gun, and Ramsey and appellant became frightened and ran. Appellant jumped in his car, started driving down the road, suddenly stopped, backed up, and permitted Ramsey to get in, and then drove on down the road. Ramsey further testified that appellant gave him his billfold, so that the appellant could tell the police that he had been robbed."

The question of the corroboration of the accomplice Ramsey is presented by the defendant's motion to exclude the evidence for the State.

■ We entertain the view that the motion to exclude was properly denied. The rule is well established that: "Whether or not there was evidence corroborating the accomplice witness, tending to connect the defendant with the commission of the offense, is a question of law; its weight and sufficiency, along with the testimony of the accomplice to show the defendant's guilt beyond a reasonable doubt, were questions for the jury." Smith v. State, 230 Ala. 413, 161 So. 538, 542, and authorities there cited; Skumro v. State, 234 Ala. 4, 170 So. 776.

The testimony of the victim, Saye, and that of other State's witnesses corroborated the testimony of accomplice Ramsey in the following particulars. We quote further from statement of facts contained in At-torney General's brief:

"The victim, Mr. Saye, testified that on the night before the assault the appellant came to visit him, and while they were talking on the front porch Ramsey arrived, spoke a few words to appellant, and the two men drove away. He testified that on the night of the assault appellant came to his home and called him out to the car; that he sat in appellant's car for awhile talking with him, and that appellant asked him to walk down the road a short distance with him. He testified that he followed the appellant down the road when suddenly he saw Ramsey out of the corner of his eye reflected in his glasses. He testified that Ramsey hit him several times, and that he, the victim,

called for his sister to bring his gun. He testified that as he shouted for his gun the appellant ran and jumped in his car, stating that he was going for the law. He, testified that appellant started down the road and then stopped to pick up Ramsey, and the two left together. Appellant re-turned in about thirty minutes to say that Ramsey had robbed him as he was riding down the road.

"The chief of police stated that the ap-pellant complained to him of being robbed, and told him that he would find his pocket-book in the possession of Ramsey, which was true. His sister and another neighbor also testified to seeing Ramsey jump in the car with the appellant after the attempted robbery."

■ The testimony was sufficient to go to the jury in corroboration of the testi-mony of Ramsey, and if believed by the jury beyond a reasonable doubt was suf-ficient, when considered in connection with Ramsey's testimony, to sustain a conviction against the defendant.

The only evidence introduced by defend-ant was that in support of his plea of not guilty by reason of insanity.

After the indictment was returned an in-quisition was regularly had under the pro-visions of Title 15, Section 428 of the Code of 1940, as to defendant's sanity at that time. The order of the Probate Court committing defendant to Bryce Hospital until such time as he should regain his sanity was introduced in evidence. There was evidence that defendant was commit-ted to Bryce Hospital June 16, 1949, and remained there until March 15, 1950.

Dr. Denton, who with Dr. Gordon ex-amined defendant at the jail on the in-quisition testified that the diagnosis was that defendant was insane, and the condi-tion had probably existed for some months, but that he had not seen defendant before that time.

Defendant's sister Mrs. Brown, a non-expert witness, was asked, in substance, for her opinion as to the sanity or insanity of the defendant. The State's objection to this question was sustained. While the witness stated some slight facts which

she claimed indicated an abnormal condition of defendant's mind, she testified she lived in Georgia and had seen the defendant only a few times during the past several years and made no statement as to the extent of her association or contact with the defendant at those times.

The question of the qualification or competency of a witness, whether expert or nonexpert, to give an opinion as to the sanity or insanity of the person inquired about is for the court, and not for the jury. The trial court's decision as to competency or qualification will not be revised unless it clearly appears to have been erroneous. Parrish v. State, 139 Ala. 16, 36 So. 1012; Braham v. State, 143 Ala. 28, 38 So. 919; Odom v. State, 172 Ala. 383, 55 So. 820; George v. State, 240 Ala. 632, 200 So. 602; Jones v. State, 181 Ala. 63, 61 So. 434.

We cannot say the ruling of the trial court was palpably erroneous in this case. The witness was not shown to have had an opportunity for observation sufficient to enable her to form a correct judgment of his insanity in order to give an opinion.

The court sustained the State's objection to the same question propounded to A. A. Murphy, defendant's father-in-law, who testified to an intimate association with defendant and stated acts and conduct claimed to indicate an abnormal state of mind. No exception was reserved to this ruling of the court and in the absence of such exception nothing is presented for review thereon. Kelley v. State, 32 Ala.App. 408, 26 So.2d 633; Allison v. Owens, 248 Ala. 412, 27 So.2d 785.

There was no error in the court's action in refusing to admit in evidence letters to Mrs. Brown from doctors at Bryce Hospital. These communications fall within the hearsay category and were properly excluded. Fondren v. State, 204 Ala. 451, 86 So. 71.

The State introduced evidence tending to prove the defendant sane and some of defendant's witnesses testified that defendant had lucid intervals as well as irrational periods. All of which evidence presented a question for the determination of the jury.

We find no reversible error in the record and the judgment of the trial court is affirmed.

Affirmed.