LEIGH .M. CLARK, Retired Circuit Judge.
This is an appeal from a conviction of rape and a sentence of imprisonment for forty years.
*1140 The main controverted issue was as to the identity of the person who, according to the testimony of the seventy-two-year-old alleged victim, raped her. The evidence was undisputed that the rapist got in her bed, in her house that she alone occupied, after she had gone to sleep on the night of April 15,1978, and forced himself upon her. She was positive that he was of the same race as defendant, and some of her descriptions of him corresponded with defendant, but she was not able to identify him positively.
There was abundant expert fingerprint evidence, consisting of fingerprints lifted from the door and door knob where an entry into the house had apparently been made, that matched in many details fingerprints of defendant.
Defendant, thirty-five years of age, testified that he was asleep at his aunt’s house at the time of the alleged crime according to the victim; that when he woke up the following morning a little before daylight he was told that the police had been looking for him, and he had his uncle take him to the police headquarters. There is no dispute that he did turn himself in at police headquarters that morning. He had been knowing the victim four or five years. His wife and two of his sisters-in-law had worked for the victim. He had been to the victim’s house three or four times with his wife and two little boys. His testimony as to the fingerprints was as follows:
“Q Can you tell us how those prints would have gotten there?
“A Yes, sir, I have been there. I went over there one evening after I got off from work. I was going to go by and get my uncle’s lawn mower and make some extra money, and I went by to see was she at home, and I was going to mow the grass, but she wasn’t there. If she was there, she didn’t answer the door, and I went to the front and came back.
“Q Is it possible you touched the door know, or leaned against the door.
“A Yes, I rung the doorbell, and knocked, and nobody answered. I never did go back no more.
“Q What about on the occasion you went in the kitchen, did you touch the door knob?
[[Image here]]
“A Yes, I have touched the door knob. “Q On that occasion you were in the kitchen?
“A Yes, sir, I have touched the door knob a few times.”
Defendant was supported to some extent by witnesses called in his behalf as to an alibi, and as to his being at the victim’s house on occasions that could explain the presence of his fingerprints on the door knob and door that was broken into as being caused at a time prior to the night of the crime.
All in all, the evidence presented a jury question as to defendant’s guilt, as to which a unanimous verdict of an unbiased and intelligent jury is more likely to be correct than is the judgment of any other person or persons. The next likely individual to be correct would be the trial judge, who overruled defendant’s motion for a new trial. The evidence supports the verdict of the jury and the action of the trial court.
Appellant states in his brief:'
“The State, over defense objection, was then permitted to question Defendant relative to prior accusations of rape (Tr. pp. 134-135) and produced a witness, Corinne Scott, who testified with regard to the facts of an offense for which the Defendant was previously convicted. (Tr. pp. 138-139) and of subsequent criminal acts of the Defendant (Tr. pp. 139-140).”
The cited pages of the transcript are as to cross-examination of defendant. At the conclusion of the direct examination, when questioned by his attorney as to what the alleged victim of the rape had testified, the testimony of defendant as a witness was as follows:
“A Yes. I raise my right hand to God, I never did nothing like that.
“Q You didn’t do that?
*1141 “A No, sir.
“Q Have you ever done that?
“A I never have treated a lady like that, never in my life.
“Q To any female; is that what your testimony is?
“A No, sir, that’s what I said.
“Q Have you ever forced a lady, against her will, to have sex with you?
“A No. Sir.
“MR. SCHWENN: That’s all.”
Contextually the testimony of defendant on cross-examination relative to prior accusations of rape, is shown as follows:
“Q You raised your hand a minute ago to God and said you never have attempted to do that kind of thing to a woman. Have you ever attempted to molest, or rape, or abuse a woman, ever in your life?
“A No, I haven’t. I have been accused of these things several times.
“Q You have been accused of these things?
“A Right.
[[Image here]]
“Q How many times have you been accused of it, George?
“A I have been accused of one last year.
[[Image here]]
“Q Every time you’ve been accused of it has been about an older woman, hasn’t it? You have been accused of it three or four times, haven’t you?
“A Yes, sir.”
Aside from any possible question whether evidence relative to other crimes similar to the one involved here would come within any exception to the general exclusionary rule as to other crimes, we are of the opinion that defendant opened the door for evidence as to other similar crimes, by his testimony on direct examination that he had never committed any such crime. Vincent v. State, 231 Ala. 657, 165 So. 844 (1936); Owens v. State, 21 Ala.App. 321, 108 So. 654 (1926).
As to the testimony on cross-examination of defendant as to his ever being accused of crimes similar to the crime charged against him, it is to be noted from the above extract from his cross-examination that he volunteered, without being asked by the State, his testimony that he had been accused before of such a crime. In cross-examining the defendant there was no conflict with the principle:
“. . . The state cannot make its own setting for the justification of illegal evidence, so as to permit the contradiction of what is brought out, though on cross-examination of witnesses for defendant.” Dickinson v. State, 228 Ala. 28, 29, 152 So. 29, 30 (1934). See also, Walker v. State, Ala.Cr.App., 358 So.2d 800, 806 (1978).
An answer to the contention that the admission of testimony of the State’s witness Corinne Scott constitutes reversible error is to be found in the pages of the transcript cited by appellant, (Tr. pp. 138-140). The only objection in any of the testimony of the witness as found on the cited pages is as follows:
“Q Well, where was he when the police got there?
“A Who?
“Q Mr. Timmons over there.
“A They say he was coming out of the house.
“MR. SCHWENN: We object to this whole line of questioning and move for a mistrial.
“THE COURT: I sustain your objection, but it comes too late. I will overrule your motion for a mistrial.” (Emphasis added).
We have considered all of appellant’s contentions for a reversal. In addition, we have searched the record for error prejudicial to defendant and have found none. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the *1142 provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.