BOOKOUT, Judge.
Theft of property in the second degree (violation of Code § 13A-8 — 4(g), theft of livestock); sentence: fifteen years’ imprisonment (habitual offender) and $300 restitution.
I
The appellant contends the evidence was insufficient to connect him with the offense charged. A review of the facts is therefore necessary.
At dusk on February 19, 1980, Lemuel L. Adams drove to his farm in north Montgomery County. On arriving at his pasture Adams said he saw a red and white Dodge pickup truck sitting off the road and on the grass, “right up against my fence.” Simultaneously he saw “two boys” in his pasture who had one of his calves down and appeared to be trying to skin it. A second calf had been shot to death.
When Adams saw what was happening, he shouted “Hey, what y’all doing to my cows?” The two people with the calves ran to the far side of the pasture, and the Dodge truck “took off.” Adams tried to block the truck with his own, but the driver was able to evade him and a chase ensued. Adams pursued the truck until it drove into a gravel pit where the driver abandoned it and ran away. Although Adams could not physically catch the driver, he made a positive identification of the driver as being the appellant.
On cross-examination Adams stated that the appellant later “called me wanting to know if he could pay me without coming to court.” Likewise, on cross-examination and without objection, Adams testified that the truck in question was registered in the ap *1336 pellant’s name. We therefore conclude from the above facts that the State presented evidence from which the jury could infer guilt on the part of the appellant. As we stated in Trussell v. State, 57 Ala.App. 109, 112, 326 So.2d 301 (1976):
“This Court, in testing the sufficiency of the evidence, is not bound as a jury, to believe the evidence beyond a reasonable doubt and to a moral certainty in order to affirm the conviction. Rather, we must determine if there was legal evidence from which the jury could by fair inference find guilt. If so, we have no right to disturb the verdict....” (Citation omitted.)
II
During the State’s case in chief, the following in-custody statement of the appellant was introduced after proper predication and without objection:
“I was fishing on a little old creek on the Lower Road. My truck would not crank when I got ready to leave. I left the truck right there. I walked home. I went back the next morning and my truck was gone. I checked to see if it had been pulled in. I didn’t report the truck stolen because the police had some warrants on me. I didn’t want to go to jail.”
The State then called Lawson E. Hanson, security officer of the Montgomery City Jail, to introduce jail records to show that between the time the truck was abandoned and the instant arrest of the appellant that the appellant had been incarcerated in the city jail on several occasions. The prosecutor argued that the purpose of such evidence was to refute the appellant’s story that he had not reported the truck stolen because he was wanted on some warrants and would go to jail if he reported the alleged theft. Counsel for appellant objected and argued the following grounds:
(1) “I say, Your Honor that the Defendant has the right and privilege against self-incrimination. He has not taken the stand. He has not made any defense at all, and presuming what Mr. Bell does as to what this Defendant’s defense is going to be about the truck, from all that it appears from the evidence so far, the truck could have been — anybody could have had possession of the truck.
“Our defense, as we stated to the Jury, is that this man wasn’t in it. There’s no positive identification of him.”
(2) “Your Honor, they’ll convict him on his record if this is true, three or four times in the city jail, they’ll convict him on that if nothing else. That is prejudicial. They’ll just say he ought to be in jail. Period. And forget it. You see. And he’s entitled to a fair trial and we haven’t put him on the stand.”
Other objections assigning “every ground that I have under the Constitution of the State of Alabama and the United States of America” without enumerating them or specifying a particular ground are general objections. The same is true of an objection to “anything about it, everything about it, and everything connected about it,” and “under every objection we have under the laws and the Constitutions.” A trial court need not cast about for tenable grounds of objection to evidence. Turley v. State, 356 So.2d 1238 (Ala.Cr.App.1978).
As to specific ground (1) above, we are uncertain as to what counsel intended. We are unable to see how the evidence objected to violated the appellant’s privilege against self-incrimination. Certainly the State is free to put on its evidence, including properly predicated extrajudicial statements of an accused, and whether that evidence incriminates the accused or not does not deprive him of exercising his right to remain silent. We see many cases where the State’s evidence overwhelmingly contradicts an exculpatory extrajudicial statement of an accused. This raises only an issue of trial strategy for the accused’s consideration — whether to risk testifying or to remain silent and leave the contradiction unresolved in the minds of the jurors.
Pressures generated by the State’s case may often be severe, but they do not vitiate the accused’s choice to testify or not. In *1337 the case where a Florida statute required defendants to disclose alibi witnesses, the United States Supreme Court in Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), stated:
“That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination....”
We therefore find no error on the part of the trial judge in overruling the instant objection on the ground stated. On appeal the defense is bound by the grounds stated in their objections at trial. Franklin v. State, 357 So.2d 364 (Ala.Cr.App.), cert. denied, 357 So.2d 368 (Ala.1978).
Ground (2), supra, is specific enough to raise the issue of the potential prejudicial effect of showing prior criminal conduct on the part of the appellant not charged in the instant indictment. However, there are several reasons why we believe the trial court did not err in overruling this specific objection.
The general rule is stated in Gamble, McElroy’s Alabama Evidence, (3d ed.) § 69.-01:
“On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character....” (Emphasis added.)
We find in the instant case that the jail records were not introduced for the purpose of showing the bad character of the appellant. The records were used to refute the appellant’s statement to the police as to why he did not report the alleged theft of his truck. At first glance it may appear that the State set the stage for introducing apparently improper evidence by injecting the appellant’s alibi statement into the trial and then attempting to refute it with the jail records. If this was so, then reversible error would result. As stated in Dickinson v. State, 228 Ala. 28, 29, 152 So. 29 (1934):
“The state cannot make its own setting for the justification of illegal evidence, so as to permit the contradiction of what it brought out, though on crossexamination of witnesses for defendant.”
However, the instant case is somewhat different than the rule in Dickinson would imply. Here, the State did not bring up the subject in controversy — the defense did. The defense counsel injected the accused’s statement to police into the trial initially. On cross-examination by defense counsel, Sheriff’s Investigator Wayne Ward testified that at 4:10 p. m. on April 25 he arrested the appellant, and the appellant denied any knowledge of the crime and told Ward the truck had been stolen.
The State did not ask witness Wayne Ward a question about the appellant’s statement until after defense counsel brought the issue up and elicited the fact that appellant told Ward that he knew nothing about the crime. It was defense counsel that elicited the fact that the appellant said his truck had been stolen. The prosecutor, on redirect examination, immediately stated: “Well, if we’re going to get into that, do you have the written statement that you took from him?” The proper Miranda and voluntariness predicates were laid, and the statement was put into evidence without objection.
Defense counsel then on recross examination asked if the appellant told Ward he had a warrant out for him in a paternity case. Ward answered that “[h]e told me he had some outstanding warrants, that the city police had some outstanding warrants on him.” The State then called Lawson Hanson and introduced the city jail records in question.
It is clear that defense counsel injected the appellant’s alibi statement into the trial during cross-examination, yet our inquiry does not end by a simple answer to the question, “Who opened the door?” Walker v. State, 358 So.2d 800 (Ala.Cr.App. 1978). Evidence which incidentally shows the admission of some unrelated offense may be introduced where it is relevant to rebut special defenses. Snead v. State, 243 *1338 Ala. 23, 8 So.2d 269 (1942). The test for admissibility of such evidence is set out in Snead, supra:
“In all instances, the question is whether the proposed evidence is primarily to prove the commission of another disconnected crime, or whether it is material to some issue in the case. If it is material and logically relevant to an issue in the case, whether to prove an element of the crime, or to controvert a material contention of defendant, it is not inadmissible because in making the proof the commission of an independent disconnected crime is an inseparable feature of it.”
We therefore find no error on the part of the trial court in admitting the jail records to rebut the alibi defense set up in the appellant’s extrajudicial statement which was injected into the trial by defense counsel.
III
Appellant contends that the trial court erred in refusing certain written requested charges to the jury. More particularly he complains that the court should have given his charges relating to “reasonable doubt” arising from a “part of the evidence.”
The Alabama Supreme Court has held it to constitute error to refuse such a charge, if properly phrased, where the subject was not covered in a given charge or in the court’s oral charge. Rakestraw v. State, 211 Ala. 535, 101 So. 181 (1924), followed in Richards v. State, 358 So.2d 488 (Ala.Cr. App.), cert. denied, 358 So.2d 490 (Ala.1978). However, that court has held it not to be error to refuse such a charge where the trial court presents to the jury “a discussion of the reasonable doubt standard as applied to the evidence generally.” Dillard v. State, 371 So.2d 947 (Ala.1979), citing King v. State, 356 So.2d 1220 (Ala.1978). But, on the other hand, this court was recently reversed by the supreme court in Ex parte Hamilton, 396 So.2d 123 (Ala.1981), for relying on Dillard. There the court stated that “reasonable doubt may arise out of only a part of the evidence” and held it to be reversible error for the trial judge to refuse a properly drafted charge setting forth that principle.
In the instant case we find in the trial court’s explanation to the jury of the reasonable doubt standard:
“The term ‘reasonable doubt’ means a doubt which there is some evidence in the case a reason for or the lack of evidence, a doubt which you are able to find in the evidence a reason for, or the lack of such evidence.... ” (Emphasis added.)
By the use of the term “some evidence,” the trial judge in effect charged on “part” of the evidence because “some” refers to less than the whole. Our finding here may best be summed up by a quote from King, supra, at 1222: “It thus appears that the jury was instructed that a reasonable doubt may arise from some of the evidence when considered with the whole of it.” (Emphasis added.)
The other refused charges were either affirmative, or covered in the court’s oral charge, or used the wrong gender “her” or “she” rather than “him” or “he.” Blalock v. State, 369 So.2d 35 (Ala.Cr.App.), cert. denied, 369 So.2d 38 (Ala.1979).
IV
At the sentencing hearing the appellant challenged his treatment under the habitual offender statute (Code § 13A-5-9 et seq.) on the ground that he was never indicted as a habitual offender. He likewise contended that where a person is “convicted on the same day for a series of crimes ... that’s generally considered as one offense.” Those issues have been decided adversely to the appellant’s position in Watson v. State, 392 So.2d 1274 (Ala.Cr.App.), cert. denied, 392 So.2d 1280 (Ala.1981), and in Holley v. State, 397 So.2d 211 (Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala.1981).
AFFIRMED.
All the Judges concur.