[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 867 
Charles Austin Gratton, Jr. was indicted and convicted for burglary in the first degree involving Judy Wilkinson. He was sentenced as an habitual offender to life without parole. We affirmed Gratton's conviction for first degree burglary involving Barbara Britton in Gratton v. State, 455 So.2d 189 (Ala.Cr.App. 1984). Eight issues are raised on this appeal.
 I
Gratton argues that reversible error was committed when the trial judge refused to allow the defense to introduce evidence concerning the mental incapacity of Mrs. Wilkinson, the victim.
Mrs. Wilkinson testified that on the morning of May 3, 1980, she was awakened by "a man saying if you don't turn over on your back, I'm going to kill your baby." Mrs. Wilkinson got on top of her two-year-old daughter who was sleeping with her to protect her. The man started stabbing Mrs. Wilkinson and then ran from her apartment. About a week later, after Mrs. Wilkinson had been released from the hospital, she identified Gratton in a police lineup as her assailant. On cross examination of Mrs. Wilkinson, defense counsel did not attempt any inquiry into her mental condition.
As part of Gratton's defense, defense counsel sought to introduce into evidence a petition which Mrs. Wilkinson's mother had filed seeking to have the victim committed to a mental institution.
 "MR. JOHNSON (Defense Counsel): Your Honor, I would propose to show in June of 1980, a commitment hearing — not a commitment hearing — but a petition to commit Mrs. Judy Wilkinson to Bryce Hospital alleging that she was mentally ill was filed in Probate Court, that she was ordered arrested and that she was carried to the jail and then transferred quickly to 3 North. I would offer to show from this petition, and the petition was signed by her mother, and I would question her as to whether or not she was over a two to three year period taking tranquilizers and pain pills excessively and these things that are in the petition from her mother. And I would also question her as to whether or not — Mrs. Wilkinson as to whether or not she had had some mental illness for some two to three years, whether or not she continuously broke glass and whether or not she threatened people on occasions with knives. And I would also propose, if your Honor ruled that it was admissible, to call — if she denied those things, to call her mother who filed that sworn petition, the purpose of that being to show her state of mind and just her competency as a witness.
 "That was filed in June of '80, June the — anyway, it was June. I'm not sure of the exact date. But it was June of 1980.
 "MR. CAHILL (Assistant District Attorney): Your Honor, we would object to this going in. That was merely an allegation just as the swearing of a warrant is an allegation. And we feel that that would not be admissible, whether it be an *Page 868 
allegation of mental competency or an allegation of crime, committing a criminal offense.
 "MR. JOHNSON: I will state, Judge, that upon the hearing by Judge Reynolds some week or ten days later, that the petition was dismissed, that she was released from that hospital.
 "THE COURT: All right. Well, being that June was after the event and all, I will sustain the objection." (Emphasis added).
Defense counsel then called Mrs. Wilkinson as a witness but did not make or attempt any inquiry into her mental competency.
Although the credibility of a witness may be attacked by a showing of mental derangement, questions "which merely tend to show a mental condition or mental treatment at a time prior to trial, or not contemporaneous to the matter being testified about, are not admissible as impeaching the credibility of a witness." Garrett v. State, 268 Ala. 299, 306-07, 105 So.2d 541
(1958).
 "The credibility of a witness may be impeached by proving mental derangement or insanity but only if such mental incapacity exists at the time the witness takes the stand to testify or at the time he observed the facts to which he has testified on direct. Consequently, proof may be made of his insanity or another more precise kind of mental illness that might be reasonably supposed to affect his capacity to observe, recollect, or narrate either at the time of his testifying or at the time of the event to which he has testified." C. Gamble, McElroy's Alabama Evidence, § 141.01 (1) (3rd ed. 1977).
From the record there appears to be some confusion over the exact manner in which defense counsel desired to prove Mrs. Wilkinson's mental incompetence. The petition was inadmissible because it constitutes hearsay, Cox v. State, 36 Ala. App. 99,102, 52 So.2d 826 (1951), and insanity may not be proven by hearsay. Dickinson v. State, 228 Ala. 28, 29, 152 So. 29 (1934).
Here, there was no specific contention that Mrs. Wilkinson was mentally deranged at the time of the offense or at the time of trial. Neither was there a contention that Mrs. Wilkinson's alleged use of drugs was so excessive as to have impaired her memory. The principle stated in Standard Oil Co. v. Carter,210 Ala. 572, 574, 98 So. 575 (1924), is applicable here. "The use of opium cannot be introduced to impair the credit of a witness unless it be shown that he was under the influence of the drug at the time of testifying or at the time of the occurrence of the event to which he is testifying, or that his mind was generally impaired by the use of said drug."
We find no error in the action of the trial judge. It is not clear exactly how defense counsel was going to attempt to impeach Mrs. Wilkinson, whether by the petition itself or through examination of Mrs. Wilkinson or her mother. Moreover, it is within the discretion of the trial court to refuse to allow a witness to be recalled to lay a foundation for impeachment.Pitman v. State, 148 Ala. 612, 42 So. 993 (1906); Bell v. State,74 Ala. 420 (1883); Baxter v. State, 360 So.2d 64 (Ala.Cr.App. 1978).
 II
Gratton contends that Mrs. Wilkinson's in-court identification of him should have been suppressed "due to the highly suggestive and distorted procedure employed in the police line-up."
Gratton was not denied any constitutional right to the assistance of counsel. He was arrested in the presence of his attorney while they were in court on another case. At that time counsel was informed that a lineup would be conducted but "there was never a specific time or place set for a lineup." Gratton had not been indicted for the instant offense at the time of the lineup.
The right to counsel established in United States v. Wade,388 U.S. 218, 237, *Page 869 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967), applies only to post-indictment corporeal identification procedures, and does not extend to identification procedures that occur prior to indictment. Kirby v. Illinois, 406 U.S. 682, 688-89,92 S.Ct. 1877, 1881-82, 32 L.Ed.2d 411 (1972). "The defendant had no constitutional right to counsel at a post arrest lineup for the reason that adversary judicial proceedings had not been initiated." Franklin v. State, 424 So.2d 1353, 1354
(Ala.Cr.App. 1982).
Gratton asserts that the "visual identification was unduly suggestive" because he "age 30, [was] between a 19 year old and a 22 year old, outweighing his two `comparative' participants by 20 and 16 pounds, respectively."
There were six participants in the lineup. All were dressed in white jail coveralls. The participants on either side of Gratton were placed there by Birmingham Police Sergeant Ann Ballard, who conducted the lineup. Both of these men were six feet tall, as was Gratton. Sergeant Ballard placed them there because she "tried to pick the ones that looked most like the suspect to be nearest." "The fact, in and of itself, that there was some slight discrepancy in physical appearance among the participants of a lineup does not taint that identification procedure or render it suggestive as a matter of law." Lewis v.State, 399 So.2d 907, 909 (Ala.Cr.App. 1981). "(D)isparate physical appearances of the lineup participants is not alone sufficient to warrant a finding of suggestiveness." Swicegoodv. Alabama, 577 F.2d 1322, 1327 (5th Cir. 1978); Jones v.State, 439 So.2d 824, 827 (Ala.Cr.App. 1983).
Gratton also contends that "the voice identification was, due to the utterly inadequate equipment employed, so distorted and improperly amplified as to risk being totally misleading." Sergeant Ballard, who conducted the lineup, testified that she heard Gratton's voice both before and after the lineup and that his voice "appeared the same as it had on the microphone" during the lineup and that there was not any difference. She heard no echo or distortion over the speaker system. Two defense experts, who were not present when the lineup was conducted, examined the public address system and the acoustics in the lineup room at the Birmingham City Jail. One witness testified that there was "considerable distortion of the voice . . . primarily due to the reverberation within the small room." The other expert testified that he could not recognize a known voice over the sound system. He stated that "it's a very poor system as a voice identifying instrument. It appears to have been a system designed to communicate merely from one room to the next, and not to identify words."
Although the alleged poor quality of the sound system at the lineup facilities may have been "misleading", we fail to understand how that could be termed suggestive. In view of the fact that there was conflicting testimony on the sound reproducing qualities of equipment, we will not disturb the trial judge's ruling on the admissibility of the in-court identification. Under the circumstances of this case, the testimony of the sound experts went to the credibility of Mrs. Wilkinson's identification and not to the admissibility of her in-court identification.
Mrs. Wilkinson's identification was based upon what she both saw and heard. Mrs. Wilkinson identified Gratton in the lineup when she first walked in and saw the backs of all the participants. Cartee v. State, 390 So.2d 1121 (Ala.Cr.App.), cert. denied, Ex parte Cartee, 390 So.2d 1126 (Ala. 1980). She was positive in her identification. Furthermore, there is evidence in the record that her identification was reliable under the totality of the circumstances analysis employed inManson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243,53 L.Ed.2d 140 (1977), and that her in-court identification of Gratton was based on her observation of him at the time of the crime. For these reasons, we find that the pretrial identification procedures were not impermissibly suggestive and did not present a substantial likelihood of misidentification. *Page 870 
Consequently, Mrs. Wilkinson's in-court identification of Gratton was proper.
 III
State witness Jack Bland testified over defense objection that he was employed at the Birmingham City Jail on August 1, 1967, and that he made a fingerprint card on Gratton. Gratton argues that this was an effort by the State to convey to the jury that Gratton had been in jail in August of 1967.
The crime occurred on May 3, 1980. Testimony concerning Gratton's fingerprint card was admitted into evidence and used to identify and match the prints Gratton left at Mrs. Wilkinson's apartment. The fingerprint card itself was not admitted into evidence.
"The mere existence of recorded fingerprints does not per se imply the existence of a criminal record." Brown v. State,369 So.2d 881, 884 (Ala.Cr.App. 1979). "The general rule . . . is that the admission of a defendant's fingerprint identification card is not impermissibly prejudicial to the defendant where the card was altered prior to its introduction so that it did not disclose the defendant's criminal record." Woodson v.State, 405 So.2d 967, 968 (Ala.Cr.App.), cert. denied, Exparte Woodson, 405 So.2d 969 (Ala. 1981). The fact that the fingerprint card was made at the Birmingham City Jail does not, in and of itself, imply the existence of a past criminal record. Woodson, 405 So.2d at 969 ("The date (even if it is before the offense involved in the trial) and the place of taking (the police department) need not be eliminated from the fingerprint record before the card is introduced into evidence").
 IV
At the time of his arrest, Gratton was in the county courthouse on another charge. His automobile was parked across the street in the county courthouse parking lot. Gratton argues that the prosecutor improperly attempted to place this evidence before the jury so as to afford the inference that Gratton was in court for another offense. We disagree.
There had been testimony that Gratton's automobile was discovered and seized on the first floor of the parking deck of the Jefferson County Courthouse when the prosecutor elicited the fact that Gratton was "across the street" from his automobile when the car was located. Earlier, the trial judge had remarked: "Well, I think that anybody can come in and park their truck there and maybe come in for a fishing license or anything. But I will sustain on that point. I'm super sensitive on that point. * * * You may say that his car was at a downtown parking lot." Later, without objection, Sergeant Ballard testified that she had first seen Gratton's car "on the courthouse parking deck." There was no testimony placing Gratton at or in the county courthouse at the time his car was located.
We do not think that this information is adequate to convey to the jury the implication that Gratton was in court facing criminal prosecution at the time his automobile was seized.
 V
Gratton argues that the knife seized from his automobile was improperly admitted into evidence for three reasons. First, he asserts that "the warrant does not show on its face that the information received from Dewey Cole, the witness who described the car, is reliable." "The same showing required of an informer under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509,12 L.Ed.2d 723 (1964), is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim or witness." Mauldin v. State, 402 So.2d 1106, 1108
(Ala.Cr.App. 1981). In Illinois v. Gates, 462 U.S. 213,103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the rigid two-pronged test of Aguilar and, in its place reaffirmed "the totality of the circumstances analysis that traditionally has informed probable cause *Page 871 
determinations." 103 S.Ct. at 2332. Furthermore, since the affidavit was not introduced into evidence at any time before the circuit court and is not in the record on appeal, this Court's consideration of the sufficiency of the affidavit is precluded. Thomas v. State, 383 So.2d 214, 215 (Ala.Cr.App. 1980).
Gratton's second argument is that the search warrant was not executed by a member of the Sheriff's Department nor was a proper return made by a Deputy Sheriff. Since the search warrant was not offered into evidence and is not contained in the record, we have nothing to review. Thomas, supra. Moreover, although Police Sergeant Ballard did testify that she "executed" the search warrant, she later stated that she was accompanied by "Sheriff's Deputy Sergeant J.D. Robinson" and that "the Sheriff's Deputy opened" the car doors.
Since the police officers were accompanied by a deputy sheriff, the search warrant was properly executed, Luster v.State, 433 So.2d 481 (Ala.Cr.App. 1983), and the holding ofRivers v. State, 406 So.2d 1021 (Ala.Cr.App.), cert. denied,406 So.2d 1023 (Ala. 1981), was not violated. Alabama Code (1975), § 15-5-5, § 15-5-7. Since the warrant was issued by a circuit judge, rather than a municipal judge, Alabama Code §12-14-32 does not apply. See Palmer v. State, 426 So.2d 950
(Ala.Cr.App. 1983); Hicks v. State, 437 So.2d 1344
(Ala.Cr.App.), affirmed, Ex parte Hicks, 437 So.2d 1346 (Ala. 1983).
Finally, Gratton argues that there was no showing that the knife recovered was the same knife used against Mrs. Wilkinson. Mrs. Wilkinson testified that she was stabbed with a knife. The treating physician testified that a knife could be reasonably calculated to have produced the wounds he observed on her body. Gratton's fingerprints were found at the scene and his automobile was observed leaving the scene of the crime.
Although the State could not prove with certainty that the knife found in Gratton's car was the same knife he used in the assault, the discovery of the knife in Gratton's car was an incriminating circumstance the jury was entitled to consider. See Mitchell v. State, 94 Ala. 68, 10 So. 518 (1891); Carrollv. State, 440 So.2d 1168, 1170-71 (Ala.Cr.App. 1983); Lewis v.State, 335 So.2d 426, 429, n. 1 (Ala.Cr.App. 1975), cert. denied, 335 So.2d 429 (Ala. 1976). Evidence that the accused possessed a weapon with which the crime might have been committed after the commission of the crime is relevant and admissible, at least where the accused is placed at or near the scene of the crime at about the time of its commission.Humphrey v. State, 370 So.2d 344, 347 (Ala.Cr.App. 1979). "Even though the witness could not say positively that this knife was the exact one used in the fatal stabbing, such should not prevent the knife from being introduced into evidence for the consideration of the jury." Means v. State, 51 Ala. App. 8, 11,282 So.2d 356, cert. denied, 291 Ala. 792, 282 So.2d 359
(1973).
 VI
Gratton complains because jurors were permitted to "wander through the Courtroom" during the hearing on his motion to suppress the in-court identification. He contends that although "apparently the jurors did not hear any of the testimony since the judge cut off the proceedings when they entered . . . the clear implication from such exposure is that the jurors could conclude that the defense was seeking to remove or hide some evidence from their consideration."
The record shows that after the jury had been selected and sequestered, the jurors were allowed to "use the telephone to call anybody at home . . . and tell them to bring you some things to the Passport Inn." The jury was removed from the courtroom and a hearing was conducted on several motions filed by Gratton. During this hearing, defense counsel made several objections to jurors "being brought" through the courtroom by "court personnel". In response to these objections, the trial judge noted that "(e)very time they came in, we *Page 872 
stopped" and this fact is not disputed. Here, there was no violation of the rule that hearings on motions and objections are properly taken up outside the presence and hearing of the jury. Jenkins v. State, 404 F.2d 873 (5th Cir. 1968).
"The trial court is vested with discretion in the conduct of a trial and appellate courts will not interfere therewith unless it clearly appears that there has been an abuse of discretion." Townsell v. State, 255 Ala. 495, 498, 52 So.2d 186
(1951). This Court will not interfere with the trial court's exercise of discretion unless a clear abuse in the exercise of that authority has been shown. Woods v. State, 367 So.2d 982,984 (Ala. 1978). The trial judge's actions are presumptively correct in the absence of a showing to the contrary. Ballard v.State, 236 Ala. 541, 542, 184 So. 260 (1938). On appeal, error is not presumed and the party claiming that a trial judge has abused his discretion has the burden of persuasion. Connell v.State, 294 Ala. 477, 481, 318 So.2d 710 (1974). Speculation and surmise will not serve as a basis for error in a criminal case.Cook v. State, 369 So.2d 1243, 1249 (Ala.Cr.App. 1977), affirmed in part, reversed in part on other grounds,369 So.2d 1251 (Ala. 1978).
 VII
Gratton argues that the trial judge failed to instruct the jury that the intent to commit the assault had to exist at the time of the unlawful entry. The indictment charged that Gratton "did, knowingly and unlawfully enter or remain unlawfully in a dwelling . . . with intent to commit a crime therein, to-wit: assault in first degree, and while effecting entry or while in the dwelling or in immediate flight therefrom, said defendant was armed with an explosive or deadly weapon."
In his oral instructions to the jury the trial judge defined burglary in the first degree but failed to define assault in the first degree. The judge gave the statutory elements of burglary in the first degree and also charged that the jury had to find beyond a reasonable doubt that Gratton knowingly and unlawfully entered Mrs. Wilkinson's dwelling and "that in so doing he acted with the intent to commit a crime therein."
When the prosecutor informed the judge of his failure to charge on the elements of assault in the first degree, the trial judge gave an additional instruction to the jury stating the statutory definition of that offense. Defense counsel then requested that "since you added that charge, that you also instruct the jury that they be required to find an intent to commit assault in the first degree at the time of entering" the dwelling. The judge overruled that request.
Here, the request for additional or repeated instructions on intent was properly refused. The substance of the requested charge was covered in the original charge, White v. State,410 So.2d 135 (Ala.Cr.App. 1981), and it was in the judge's discretion whether or not to repeat an instruction already given. Flowers v. State, 402 So.2d 1118, 1119 (Ala.Cr.App. 1981).
Moreover, the requested instruction was not a correct statement of the law. Prior to the adoption of Alabama's new Criminal Code, the statutory crime of burglary in the first degree (§ 13-2-40) required that the intent to steal or to commit a felony be concurrent with the breaking and entering.Cook v. State, 409 So.2d 965, 967 (Ala.Cr.App. 1981); Davis v.State, 44 Ala. App. 284, 289, 207 So.2d 649 (1967), cert. denied, 281 Ala. 718, 207 So.2d 656 (1968). However, under the criminal code definition of burglary, the intent to commit a crime may be concurrent with the unlawful entry or it may be formed after the entry and while the accused remains unlawfully. § 13A-7-5 through § 13A-7-7 Commentary. Consequently, the request to instruct that the intent must be formed at the time of entry was an incomplete statement of the law and therefore properly refused. *Page 873 
 VIII
Gratton was properly sentenced as an habitual offender. We reaffirm our decision in Watson v. State, 392 So.2d 1274
(Ala.Cr.App. 1980), cert. denied, Ex parte Watson,392 So.2d 1280 (Ala. 1981), upholding the constitutionality of Alabama's Habitual Felony Offender Act. Alabama Code (1975), § 13A-5-9.
Both at trial and on appeal Gratton has received exemplary representation by appointed counsel. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.