Brian Keith MOORE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.  (Two Cases)

Nos. 85–SC–101–MR, 86–SC–662–TRG.

Supreme Court of Kentucky.

Nov. 17, 1988.

Rehearing Denied June 29, 1989.

William M. Radigan, Walker, Radigan & Zeller, Louisville, J. Vincent Aprile II, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Cicely Jaracz Lambert, Valerie L. Salven, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

Brian Keith Moore appeals from a judgment convicting him of first-degree robbery, kidnapping and capital murder. He was sentenced to death for the murder and received two separate sentences of twenty years for the kidnapping and robbery offenses.

In March 1980, Moore was found guilty of the same offenses and sentenced to death but this Court reversed the conviction and remanded the case for a new trial. *Moore v. Commonwealth*, Ky., 634 S.W.2d 426 (1982). A second three-week trial was conducted in October 1984 with final judgment entered on October 29, 1984.

The victim was a 77–year–old man who operated an ice cream parlor in Louisville. It was his habit to visit an A & P grocery to obtain bananas. On Friday, August 10, 1979, at approximately 11:20 a.m. a witness at the A & P recognized the victim as a frequent customer who bought only bananas. Another witness was in her car in

the A & P parking lot when she noticed a fairly neat young white man standing behind an open driver's door holding a gun on an elderly man seated on the passenger side. Circumstantial evidence indicates that Moore drove off in the victim's car approximately 9.5 miles to Jefferson Hill Road where he pushed the victim down an embankment, shot at him and missed, then shot him four times in the head at close range. An autopsy showed the victim died of a gunshot wound to the head with one bullet entering below the right eye, one inside the right ear, one behind the right ear and one on the top of the head. The top of the head wound was a contact wound. Bruises were also found on the victim's hand, forearm, face and ear.

The jury returned a verdict of guilty on murder, twenty years on kidnapping and twenty years on first-degree robbery. Following evidence presented at the penalty phase, the jury returned a death sentence based on a determination that the murder was committed during the commission of first-degree robbery.

Moore, through his counsel, raises twenty-six assignments of alleged error in this appeal. This opinion will focus on all of the issues addressed by Moore's counsel at oral argument plus others presented in the brief which, in the opinion of this Court, merit discussion. Allegations of errors which we consider to be patently without merit will not be addressed here. The principal issues involve the refusal by the trial court to instruct on the lesser offense of second-degree manslaughter due to the intoxication of the defendant; the overruling of a defense motion to impanel a new jury for the sentencing phase; the rulings of the trial judge on the scope of Moore's right to cross-examine certain prosecution witnesses; the refusal by the trial court to allow Moore to consult with his counsel during a lunch break in his direct testimony during the guilt phase and the sustaining of a challenge for cause by the prosecutor against two venirepersons. Finally Moore raises the question of cumulative error on appeal.

■ The trial judge did not commit reversible error in refusing to instruct the jury on second-degree manslaughter when he had given an intoxication instruction at the guilt phase of the trial. The instructions on intentional murder, robbery and kidnapping were based on the evidence presented at trial, and the trial judge properly denied an instruction on second-degree manslaughter. The evidence was not sufficient to support an instruction on intoxication, and the giving of such an instruction was more than what Moore was entitled.

■ There is no requirement that a lesser included offense be automatically added to the instructions whenever the jury is instructed on the defense of intoxication. Voluntary intoxication neither excuses the offense nor mitigates the punishment. *Shannahan v. Commonwealth,* 71 Ky. (8 Bush), 463 (1871). The circumstances of voluntary intoxication, standing alone, will never require a voluntary manslaughter instruction. *Richards v. Commonwealth,* Ky., 517 S.W.2d 237 (1975). Although *Richards, supra,* is a prepenal code case, it has been cited with approval in more recent cases, and we believe the reasoning is sound. We are not convinced that *Meadows v. Commonwealth,* Ky., 550 S.W.2d 511 (1977) is properly invoked by Moore in this case.

There was no evidence in this case which entitled Moore to an intoxication instruction. The mere fact that Moore was able to convince the judge to give an instruction that he was not entitled to does not justify a claim that a second-degree manslaughter instruction was required, even though such an instruction would have been required had there been evidence sufficient to justify the intoxication instruction.

■ Intoxication is a defense only if there is something in the evidence sufficient to support a doubt that the defendant knew what he was doing. *Jewell v. Commonwealth,* Ky., 549 S.W.2d 807 (1977). Lack of sleep or fatigue is not a defense. It is just another factor for the jury to consider. The instructions which Moore re-

ceived in regard to intoxication were more than enough.

The testimony of the three officers who heard Moore's confession established that he had been taking drugs and drinking the night before the murder. There was insufficient evidence to support a contention that Moore was intoxicated at the time of the offenses and that he did not know what he was doing. To the contrary, Moore gave a detailed account of the offenses. The testimony by witnesses who observed Moore after the time of the crimes was that he did not appear to be intoxicated.

The circumstances did not justify an additional instruction on a lesser included wanton offense. The crimes were committed near midday and showed intent and planning on the part of Moore. The offenses were clearly intentional. It is not proper to instruct the jury on a wanton offense when all the evidence indicates that it would be unreasonable for the jury to believe that the defendant's conduct was anything other than intentional. *Hayes v. Commonwealth*, Ky., 625 S.W.2d 583 (1982). The evidence indicates that the victim was shot four times in the head with the wound at the top of the head being a contact wound. Considering the number, location and lethal magnitude of the wounds it would have been unreasonable to instruct the jury on a wanton offense. *Halvorsen v. Commonwealth*, Ky., 730 S.W.2d 921 (1986).

There is no evidence which would have permitted the jury to determine that Moore was guilty of second-degree manslaughter rather than murder. The jury had a full opportunity to consider evidence with respect to intoxication or fatigue in both the guilt and penalty phases. The proof concerning these factors and the physical evidence did not justify permitting the jury to speculate on any offense for which wantonness was an element.

■ Moore was not entitled to a new jury for the sentencing phase of the trial. Much of the testimony about which Moore complains of as prejudicing the jury during the guilt phase of his trial came through his own defense witness during direct examination.

Moore argues that the trial judge committed reversible error by overruling the defense motion made prior to the commencement of the sentencing phase to have a new jury impaneled because the guilt phase jury had been exposed to information that would not be admissible at the sentencing phase, including that he had previously been convicted of this murder, sentenced to death and granted a new trial.

In response to a question from defense counsel during the guilt phase of the trial, a defense witness stated, "The reason I recall this here is because in the summer of '82 Brian Moore come [sic] off death row, I guess, in this case." No request for an admonition was made at this time. On cross-examination the defense witness made the following nonresponsive answer to the prosecutor's question. "An he made a statement that that's the reason he was over on death row, was because Kenny Blair—Kenneth Blair testified against him that he killed somebody." Again, no admonition was requested. At the conclusion of the cross-examination, the prosecutor suggested an admonition be given to the jury. Defense counsel declined the admonition on the basis it would draw attention to the statements.

These were unresponsive comments on Moore's conviction from the first trial made by a defense witness and were incidental to the main thrust of the witness's testimony. Moore did not request a curative admonition be given to the jury. The defense counsel argued against an admonition and the trial judge agreed that the best procedure was not to draw attention to the statements. The tactical procedure by defense counsel was not prejudicial to Moore's defense. The trial judge heard the comments and was in the best position to determine their prejudicial effect. These statements on the prior conviction did not rise to the degree of pervasiveness of the prejudicial statements made in *United States v. Williams*, 568 F.2d 464 (5th Cir.1978) or *Arthur v. Bordenkircher*, 715 F.2d 118 (4th Cir.1983). *Williams, supra,* dealt

with the problem of jurors reading newspaper articles which indicated the defendant had been tried on the same charges and convicted but a new trial was ordered because of "erroneous testimony." In *Arthur, supra,* the defense counsel drafted the jury instruction which informed them that the defendant had already been convicted of the charges by a jury and that the present jury was to retry the defendant because of procedural error.

Moore also alleges a variety of other errors during the guilt phase of the trial and that these errors along with the defense witness's statements coalesced to taint the guilt phase jury to the point that they could not render a fair verdict on punishment. Moore does not argue that these errors caused reversible error in the guilt phase of the trial but that a new jury should have been impaneled for the sentencing phase. However, the death penalty verdict was overwhelmingly supported by the evidence of the heinous killing by Moore independent of these alleged errors. The murder occurred during the commission of first-degree robbery and kidnapping with the victim being shot four times in the head at close range.

■ The prosecution did not present any additional evidence to the jury during the second phase of the trial but would have been entitled to introduce much of the evidence presented during the guilt phase in the sentencing proceedings even if conducted before a new jury. When the same jury sits in both parts of a bifurcated proceeding in a capital murder case, all evidence introduced in the guilt phase of the trial is admissible in the sentencing phase. *Smith v. Commonwealth,* Ky., 599 S.W.2d 900 (1980).

*Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985) does not apply in this situation because in that case the original jury was deadlocked during the penalty phase. Under such circumstances, the declaration of a mistrial was necessary and the holding of a new trial on the penalty phase was not double jeopardy. There was no need for a new sentencing jury here because there was no substantial error. It was not reversible error for the trial judge to proceed to the second phase with the original jury.

Considered in its entirety, the trial was fair and the sentencing decided in a rational way based on the facts of the case. The guilt phase was fair and Moore was not entitled to a new jury for the second phase of the trial. His conviction and sentence are upheld.

The trial judge did not abuse his discretion when he limited Moore in cross-examining various prosecution witnesses relating to both the scope and duration of the cross-examination. Moore was not denied his right to confront and cross-examine the witnesses by such rulings.

■ The presentation of evidence as well as the scope and duration of cross-examination rests in the sound discretion of the trial judge. This broad rule applies to both criminal and civil cases and is certainly applicable to a capital murder case. *Cf. Department of Highways v. Smith,* Ky., 390 S.W.2d 194 (1965); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968).

■ Moore contends that the trial court denied his Sixth Amendment right to confront and cross-examine witnesses against him by limiting his cross-examination of various prosecution witnesses. Defense counsel on the cross-examination of Kenny Blair, the chief prosecution witness, established that police officers found a laundry list of stolen property in the bedroom of an apartment he shared with Lynn Thompson. Defense counsel then tried to establish that Lynn Thompson obtained her food voucher on Thursday instead of both Blair and Thompson obtaining them on the morning of the murder as Blair maintained. And on that morning, Blair went out to steal car radios and tape decks and wound up at A & P store and abducted the victim. It was the defense theory that Blair and not Moore committed the murder.

The Commonwealth then sought to offer testimony on when the property was stolen and how it got to the apartment. The Commonwealth believed Moore created an

inference that the stolen property found in the apartment was taken just prior to the abduction and murder. The trial court refused the admission of evidence of prior crimes committed by Moore.

On cross-examination of Lt. Hassman, the defense again questioned on the stolen property found in the apartment. At this time the trial court ruled that this line of questioning was cumulative and created the inference the Commonwealth complained of, and if the defense continued the Commonwealth would be able to offer testimony to rebut this inference. This however would develop the commission of a separate crime by Moore. Moore chose not to pursue the line of questioning.

■ We have generally held that evidence of the commission of other crimes is not admissible to prove that an accused is a person of criminal disposition. *O'Bryan v. Commonwealth*, Ky., 634 S.W.2d 153 (1982). Also, evidence of other crimes cannot be admitted to prove the offense being tried unless the other crimes are being offered to prove motive, intent, knowledge, identity, plan or scheme. *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549 (1985); *O'Bryan v. Commonwealth, supra.*

In this case, the evidence of other crimes would not have been admitted to prove Moore's criminal disposition or that he committed the murder. The evidence was admissible for the limited purpose of establishing the time of the burglary, so as to rebut the inference that the burglary was committed by Blair just prior to the robbery and murder of the victim.

We are persuaded by the reasoning in *Bates v. State*, Ala.Cr.App., 405 So.2d 1334 (1981) in which the court stated the standard for the admissibility of evidence of other crimes:

In all instances, the question is whether the proposed evidence is primarily to prove the commission of another disconnected crime, or whether it is material to some issue in the case. If it is material and logically relevant to an issue in the case, whether to prove an element of the crime, or to controvert a material conten-

tion of defendant, it is not inadmissible because in making the proof the commission of an independent disconnected crime is an inseparable feature of it. *Snead v. State*, 243 Ala. 23, 8 So.2d 269 (1942). *Id.* at 1338.

Moore was not prevented from pursuing this line of questioning, but if he continued the Commonwealth was permitted to offer admissible evidence to rebut the inference created thereby.

Our review of the record indicates that Moore was not prejudiced by any of the rulings of the trial judge relating to the exclusion of inadmissible evidence, limitation on cross-examination with respect to cumulative evidence or simply requiring that the trial proceed in an orderly manner.

■ Moore was not denied his right to the effective assistance of counsel by the trial judge's direction that he could not consult with his attorney about his testimony during a lunch recess called about three/fourths through the direct testimony of Moore. The trial judge admonished Moore not to discuss his testimony or what he was going to testify about in the afternoon with anyone including his own attorneys.

The prohibition was not reversible error. Moore was not deprived of the assistance of counsel as guaranteed by the Sixth Amendment to the Federal Constitution. His attorney was present to ask questions on direct and to object during cross-examination. The restriction was brief and there was no prejudice. It was limited to the afternoon direct testimony, and it was made clear that he could discuss any other matter with his attorneys.

*Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) held that a blanket prohibition preventing any consultation between a defendant and his lawyers during a 17–hour overnight recess between direct and cross-examination was improper. However, *Geders, supra*, did not address the blanket prohibition during a brief recess. "We need not reach, and we do not reach, limitations imposed in other circumstances." *Id.* at 91, 96 S.Ct. at 1337.

The Sixth Circuit, in *United States v. Bryant*, 545 F.2d 1035 (6th Cir.1976), has applied a per se reversal rule to cover a one-hour lunch recess, thereby adopting Justice Marshall's concurring opinion in *Geders*. The Fourth Circuit in *United States v. Allen*, 542 F.2d 630 (4th Cir.1976) accepted a similar view and applied the per se reversal rule to any restriction no matter how brief. The per se reversal rule was modified in *Stubbs v. Bordenkircher*, 689 F.2d 1205 (4th Cir.1982) and required the petitioners "to show that he desired to consult with his attorney and would have consulted with him but for the restriction placed upon him by the trial judge." *Id.* at 1207.

In the Fourth Circuit's most recent case, *Perry v. Leeke*, 832 F.2d 837 (4th Cir.1987), cert. granted, — U.S. —, 108 S.Ct. 1269, 99 L.Ed.2d 480 (1988), the court reviewed their decisions in *Allen* and *Stubbs* in light of the Supreme Court's decisions in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Perry* Court stated, "We believe that the per se reversal rule of those cases (*Allen* and *Stubbs*) cannot be squared with the analysis of *Strickland* and *Cronic*, and must be replaced with an inquiry into prejudice." *Perry v. Leeke, supra,* at 841. The *Perry* court reasoned that the Supreme Court's decision in *Strickland* and *Cronic* required reversal of a conviction only if the ineffective assistance of counsel was sufficiently prejudicial:

> *Strickland* and *Geders* do not imply, however, that Sixth Amendment claims can be mechanically divided into a topology requiring automatic reversal when there is a "denial of counsel" and a prejudice analysis where there is "ineffective assistance."

*Id.* at 841.

> Instead "the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland*, 466 U.S. at 696, 104 S.Ct. at 2069. *Id.* at 841.

The *Perry* court believed the 17-hour overnight restriction in *Geders* was so severe that prejudice could be presumed. That the restriction covered a period during which the defendant and counsel are expected to confer. The court properly held that the per se reversal rule will not apply where prejudice cannot be presumed, but will look to see if the defendant suffered prejudice by the restriction.

Because Perry had no entitlement to this recess, the dissenters' speculation on what valuable services counsel may have rendered is simply misdirected. New ideas or strategies might occur to a defendant or his counsel at any time during a trial, but there is no right to halt the proceedings in order to consult. To reverse automatically a conviction because of an absence of consultation during one brief, fortuitous recess in a trial which spanned nearly two weeks would be to confer benefit upon a criminal defendant who may not deserve it. The imprecision of a per se approach is thus apparent. The proper inquiry is whether this trial was unfair, whether this defendant suffered prejudice, whether this conviction was infirm—in short, whether justice was done in this case. *Id.* at 842.

The District of Columbia Circuit held in *Mudd v. United States*, 798 F.2d 1509 (D.C.Cir.1986) that any ban on attorney-client discussions was per se reversible error. However, then Circuit Judge Scalia, stated in his concurring opinion:

> I therefore join in the majority's holding that a prohibition on attorney-defendant discussion during *substantial* recesses, even if limited to testimony, violates the Sixth Amendment.... (Emphasis added.)

*Id.* at 1515.

> [I] do not reach the issues discussed in the majority opinion not presented by the facts of this case—in particular, the rule of law applicable to total or partial bans on attorney-defendant discussion during brief recesses. *Id.* at 1515.

Our examination of the record indicates that Moore has failed to show any actual

prejudice from the testimony limitation during the lunch recess.

Moreover, after defense counsel brought the attention of the trial judge to the fact that Moore wanted to talk to them about his testimony during lunch, the judge put on the record that Moore had been brought from Eddyville to Louisville one week before the trial to review and prepare for the trial with his counsel. We do not believe there is any reversible error in this situation particularly since Moore had an earlier opportunity to discuss his testimony with counsel. The alleged error, if any, is entirely harmless under all the circumstances.

■ The trial court did not abuse its discretion in dismissing two prospective jurors for cause. Moore argues that the trial judge committed reversible error because he did not allow the defense an opportunity at rehabilitating the prospective jurors.

Both jurors stated in response to the court's questions that they could never consider imposing the death penalty.

The trial court noted that the first juror was emphatic and that there was no hesitation when she said under no circumstances could she impose the death penalty. The second juror almost started crying when asked about her opinions on the death penalty.

■ The proper standard for exclusion of a juror opposed to capital punishment is whether the prospective juror has views which would prevent or substantially impair the performance of duties as a juror in accordance with the instructions and the oath. *Wainwright v. Witt*, 469 U.S. 412 at 419, 105 S.Ct. 844 at 850, 83 L.Ed.2d 841 at 848 (1985). We are not persuaded by the citations to authority submitted by Moore.

Here both jurors demonstrated an unwillingness or inability to follow the instructions and obey the oath they would have to take if they were to sit as jurors. None of the other prospective jurors indicated such a clear opposition to the death penalty during voir dire. Additional questioning was permitted of other jurors who were less forceful in their opposition to the death penalty.

The trial judge is in the best position to determine the competency of a prospective juror to sit.

[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.... [T]his is why deference must be paid to the trial judge who sees and hears the juror. *Wainwright, supra,* at 469 U.S. 425–426, at 105 S.Ct. 853.

■ Demeanor has an important role in determining the credibility of a prospective juror. *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). The trial judge was well within his sound discretion in determining that the two prospective jurors who were challenged for cause by the prosecution could not consider the death penalty. *McIntosh v. Commonwealth,* Ky., 582 S.W.2d 54 (1979). There was no reversible error.

■ Moore is not entitled to reversal because of any cumulative effect of the alleged errors. He received a fundamentally fair trial.

■ The death sentence imposed on Moore was not inappropriate, arbitrary, cruel, unusual or disproportionate. The death penalty statute was constitutionally applied to him. The argument that his mitigating circumstances outweighed the aggravating circumstance and that his death sentence is disproportionate has been previously rejected.

In making the review required by KRS 532.075(3), we find nothing in the record that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor. The death sentence is not excessive or disproportionate to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant.

Those cases have been previously recited by this Court in *Simmons v. Commonwealth,* Ky., 746 S.W.2d 393 (1988) and that list is incorporated herein by reference and our review is in accordance with KRS 532.-075(5). In addition, we have also con-

sidered the case of *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407 (1987). We have conducted an independent review of the circumstances and conclude that they exceed any minimum justifying capital punishment.

The judgment of conviction is affirmed.

GANT, LAMBERT, STEPHENSON and VANCE, JJ., concur.

STEPHENS, C.J., dissents by separate opinion.

CUSICK, Special Justice, concurs in part and dissents in part by separate opinion.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent.

Appellant claimed he was denied his Sixth Amendment right to counsel when the trial judge forbade him to discuss his testimony with his attorney during a lunch recess. The majority found no denial of counsel and no harm because the restriction was brief and appellant showed no actual prejudice. I disagree.

Under no circumstances should a judge deny a litigant, particularly a criminal defendant, the opportunity to consult with counsel. To do so is a fundamental interference with the attorney-client relationship, regardless of the duration of the restriction. I would reverse appellant's conviction because he was denied his right to the assistance of counsel in his defense, guaranteed under the Sixth Amendment to the United States Constitution.

The majority adopted the approach taken by the U.S. Court of Appeals in *Perry v. Leeke*, 832 F.2d 837 (4th Cir.1987), *cert. granted*, —— U.S. ——, 108 S.Ct. 1269, 99 L.Ed.2d 480. In that case, the court created two categories of error. Where the recess is extreme in duration and the quality of a defendant's representation overall is suspect, prejudice will be presumed and reversal is automatic. In other circumstances, the appellate court must inquire into prejudice. *Perry*, 832 F.2d at 841. Then a conviction will be reversed only if it offends notions of fundamental fairness. *Id.* at 843.

The per se rule applied in *U.S. v. Bryant*, 545 F.2d 1035 (6th Cir.1976), and in *Mudd v. U.S.*, 798 F.2d 1509 (D.C.Cir.1986) is more consistent with the United States Supreme Court's holding in *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). After finding that restrictions for a lunch recess in *Bryant* and a weekend recess in *Mudd* violated the Sixth Amendment, both courts reversed the defendants' convictions, without an inquiry into prejudice.

Based on both the policy concerns and our reading of *Geders* we conclude that [the appellant] is not required to show actual prejudice to his right to consult with counsel; it is enough to show that the ... court restricted this right.

*Mudd*, 798 F.2d at 1513.

Two problems arise from the *Perry* approach. First, the distinction between instances in which prejudice can be presumed and when it cannot is subject to the arbitrariness inherent in I-know-it-when-I-see-it standards of measurement. Second, and more importantly, the inquiry into prejudice mandated in many cases where prejudice would not be presumed threatens to violate the privilege of attorney-client confidentiality.

We find that a per se rule best vindicates the right to the effective assistance of counsel. To require a showing of prejudice would not only burden one of the fundamental rights enjoyed by the accused, but also would create an unacceptable risk of infringing on the attorney-client privilege. The only way that a defendant could show prejudice would be to present evidence of what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense. Presumably the government would then be free to question defendant and counsel about the discussion that did take place, to see if defendant nevertheless received adequate assistance.

*Mudd*, 798 F.2d at 1513 (references omitted).

Whether the opportunity to consult with counsel results from a fortuitous or a fore-

seeable recess, a defendant may not be denied the right to take advantage of the occasion. Because appellant Moore was directed, in violation of the Sixth Amendment, not to discuss his testimony with counsel, I would reverse his conviction.

CUSICK, Special Justice, concurring in part and dissenting in part.

Brian Keith Moore was convicted in the Jefferson Circuit Court of murder, kidnapping and robbery of a 77-year-old man who had gone to the market to buy bananas for his ice cream store. The evidence indicated that Moore transported the victim over nine miles to a wooded area in southern Jefferson County where he killed him with four shots to the head, one of which was a contact wound. The circumstances surrounding these crimes amply confirm that the jury could reasonably disbelieve appellant's claim of intoxication. Further, the execution of the victim bespeaks a callousness for human life from which the jury might well determine that the offenses were deserving of the death penalty. The discussion which follows should not be taken to indicate that the author entertains any doubt concerning the appropriateness of the death penalty in this case.

It is the evidentiary context in which the sentencing jury was required to act which compels the conclusion, in my opinion, that another jury should be seated to hear the penalty phase of the trial. During the guilt phase of the trial, a defense witness stated:

> "The reason I recall this here is because in the summer of '82 Brian Moore come (sic) off death row, I guess, in this case."

On cross-examination that defense witness remarked unresponsively,

> "An he made a statement that that's the reason he was over on death row, was because Kenny Blair—Kenneth Blair testified against him that he killed somebody."

There is no reason to believe that these statements were deliberately inserted in the testimony to poison the record. Rath-

er, they appear to be an unfortunate effort by an inarticulate witness to explain the context of his testimony. Following this testimony, defense counsel did not request an admonition even when it was suggested by the prosecutor and none was given. This was a conscious tactical decision by defense counsel and waived, at least for the guilt phase of the trial, any argument that an admonition should have been given.

Appellant properly declines to argue that this constituted reversible error, but does contend that a new jury should have been impaneled for the sentencing stage in order to avoid any effect of the quoted testimony on the sentencing decision. The issue was preserved by an appropriate motion before the sentencing phase commenced.

I disagree with the majority's characterization that the quoted statements did not rise to the degree of the prejudicial statements in *United States v. Williams*, 568 F.2d 464 (5th Cir.1978) or *Arthur v. Bodenkircher*, 715 F.2d 118 (4th Cir.1983). Rather, the testimony that Appellant was already on death row in this case, and that this condition was based on the testimony of Kenneth Blair, informed the jury that another jury hearing apparently the same or similar evidence, had already decided that Moore should die for his crimes. That the error in *Williams* arose from a newspaper article, and in *Bodenkircher* from a jury instruction, is unimportant. The basis of decision in both cases is the exposure of the jury to influences which the court may not countenance.

A jury impaneled in the sentencing phase of a capital case is engaged in the most constitutionally sensitive endeavor with which the Commonwealth entrusts its citizens. "From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other state action. It is of vital importance to the defendant and the community that any decision to impose the death penalty be, and appear to be, based on reason rather than caprice or emotion." *Gardner v. Florida*, 430 U.S. 349, 359, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977). As I reflected above, I suggest

no doubt that death may be considered an *appropriate* penalty in this case. It is far from clear, however, to what extent the jury may have been influenced in the selection of an appropriate penalty by having been informed that another group of citizens, burdened with the same decision, had preceded them in determining that Brian Moore should receive the death penalty. We have no means of determining on review whether that knowledge had an impact on the jury or not. It is difficult to believe that the prior sentencing decision would have no effect on the deliberation of twelve conscientious citizens aware of the gravity of what they were deciding. Perhaps the "leadership" of the earlier jury did not enter into the group dynamics of the later one, but we should not presume that is true. It simply cannot be reliably determined on this record and that lack of reliability should preclude affirmance of the sentence. See, *Gardner, Id.* (Mr. Justice White concurring), and *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

The Appellant was entitled to a sentencing decision based on a carefully controlled record reasonably free of influences which could lead the jury to impose the death penalty for the wrong reason. That the decision it made appears reasonable or appropriate to the reviewing court is not equivalent to determining that the latter jury was not assisted in its decision by its knowledge of the former jury's action.

Accordingly, I would concur with the majority in affirming Moore's conviction, but would reverse and require that a new jury [1] be impaneled to hear the sentencing phase of the trial and independently determine an appropriate sentence.

---

1. While the decision in *Skaggs v. Commonwealth,* Ky., 694 S.W.2d 672 (1985) is not on point, it demonstrates that the court can employ a new jury in the sentencing phase of a capital case consistent with the language of KRS 532.-025(1)(a).