Brian Keith MOORE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 97–SC–79–MR.

Supreme Court of Kentucky.

Nov. 19, 1998.

Karen Shuff Maurer, Margaret F. Case, Department of Public Advocacy, Frankfort, William Yesowitch, Frockt & Klingman, LLP, Louisville, Counsel for Appellant.

A.B. Chandler III, Attorney General, Connie V. Malone, Paul D. Gilbert, Assistant Attorneys General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

STUMBO, Justice.

Appellant, Brian Keith Moore, appeals the denial of his RCr 11.42 and CR 60.02 motions to vacate his convictions and sentence of death for murder, kidnapping, and robbery.

Appellant has twice been convicted and sentenced to death for the murder, kidnapping, and robbery of Virgil Harris, a seventy-seven-year-old man, in 1979. This Court reversed Moore's first conviction and remanded for a new trial. *Moore v. Commonwealth*, Ky., 634 S.W.2d 426 (1982). Moore was retried in October 1984, and was again convicted and sentenced to death. This Court affirmed that conviction and sentence in *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1536, 108 L.Ed.2d 774 (1990).

In September 1990, Moore filed a motion, pursuant to RCr 11.42, alleging ineffective assistance of counsel in his second trial. After numerous delays, an evidentiary hearing on the RCr 11.42 motion began on September 6, 1995. On October 2, 1995, Appellant filed a CR 60.02 motion for a new trial based on newly discovered evidence, and the court permitted him to present testimony in sup-

port of this motion during the ongoing RCr 11.42 hearing. In January of 1997, the Jefferson Circuit Court denied both the RCr 11.42 and the CR 60.02 motions. Appellant now appeals that denial to this Court as a matter of right.

Appellant has raised thirty-one alleged instances of ineffective assistance and newly discovered evidence which he insists require us to vacate his convictions and/or sentence and to grant him a new trial. While we have examined all of the issues raised both during oral argument and in Appellant's brief, we will discuss only those which have any substance. We have found those issues not discussed herein to be without merit.

Because the facts of this particular case have been discussed in detail in the prior two published opinions, *Moore v. Commonwealth*, Ky., 634 S.W.2d 426 (1982) and *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1989), we will not rehash those facts here. Only those facts essential to a full understanding of this opinion will be addressed, as needed, throughout our discussion.

We begin by setting forth the standard under which all claims of ineffective assistance of counsel must be analyzed. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court announced the now familiar two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. *Strickland* requires a strong presumption that counsel acted reasonably and effectively:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
>
> . . . .
>
> [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 689–90, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95 (citations omitted).

Appellant's first allegation of ineffective assistance of counsel is by far the most troubling of all the issues raised. During both his first and second trial, Appellant's primary strategy was to create doubt in the jurors' minds by pointing the finger at another possible suspect, Appellant's friend, Kenny Blair. Blair, however, had an alibi for his whereabouts close to the time the crime was committed—he claimed he was getting his driver's licence in front of several witnesses. Blair testified that he was at the driver's license office, thirteen miles away from the scene of the victim's abduction, as early as 11:30 a.m. and that he had returned home about noon. Eyewitnesses placed the time of the ·abduction at approximately 11:45 a.m. During Appellant's second trial, in 1984, Doris Riddle, an employee of the license bureau, testified that she recalled waiting on Blair and his girlfriend in the license office sometime between 11:00 a.m. and 12:30 p.m. on the day in question, thus shoring up Blair's alibi.

The problem with Riddle's testimony is that it was inconsistent with her earlier statement to an investigating officer, made just three days after the murder occurred. In her statement to the officer, Riddle stated that she could not recall the exact time that she had seen Blair in the license office. Furthermore, another employee of the license bureau, Faye Thomas, told the detective (three days after the murder) that she had gone to lunch between 1:00 and 1:45 p.m.,

and that when she returned, her co-workers told her about a couple (Blair and his girlfriend) who had been in the office while she was gone. All of this information was available to Appellant's counsel by way of the police report in his possession, yet counsel failed to spot the inconsistencies between the report and Riddle's testimony.

Appellant now argues that by failing to use the information in the police report to impeach Riddle, trial counsel permitted Riddle's testimony to stand unscathed, thus devastating Appellant's "Kenny Blair did it" defense and eliminating any doubt in the jurors' minds about Appellant's guilt. Furthermore, if the defense had called Faye Thomas to the stand in its case in chief, not only would her statement have impeached Riddle's testimony, but it also would have confirmed Appellant's version of events— that Blair abducted and murdered the victim, then gave Appellant the victim's car and asked him to drive it to another county while Blair went to get his driver's license (thus placing Blair in the license bureau around 1:00 p.m.).

The Commonwealth argues that Appellant's complaints amount to "Monday morning quarterbacking" and that his insistence that counsel's performance on this issue was ineffective has merit only with the benefit of hindsight. Defense counsel had no reason to believe Riddle's testimony would be so crucial to the Commonwealth's case because Riddle was not an eyewitness to the crime and could not corroborate any of Appellant's claims. More importantly, counsel had no way to anticipate Riddle's testimony at trial, five years after the murder, would be so much more specific than her statement to the officer immediately following the crime. Thus, defense counsel had no reason to prepare a rebuttal to those inconsistencies. Likewise, without knowledge that Riddle's testimony would make time a crucial issue in the case, the defense had no reason to anticipate the need to call Thomas to the stand to corroborate Appellant's version of the timing at issue.

We believe this explanation too readily dismisses Appellant's concerns. Based on the evidence introduced in Appellant's first trial,

counsel surely knew that Blair's involvement in the crime would be the a crucial issue in the second trial, and that the timing of Blair's presence in the license office was vital to the defense's attempt to break his alibi. Though we agree counsel had no way to know that Riddle's testimony would be so specific, and thus had no way to anticipate the need to impeach her, we believe counsel could and should have done more to impeach her after she testified to the specific times. This is especially true given the fact that counsel had Riddle's previous statement to the detective in his hands while he was cross-examining her, yet never once asked her about her prior inconsistent statement. Furthermore, we can discern no reason which might be labeled "trial strategy" for not preparing to call Faye Thomas to the stand to confirm Appellant's version of the timing of events. In short, we find counsel's performance on this issue to be deficient.

Having satisfied the first prong of *Strickland*, Appellant must now overcome the second prong, that of showing counsel's deficient performance prejudiced his case to such a degree that it cannot be said Appellant received a fair trial. Stated another way, Appellant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. It is here that Appellant's argument must fail.

██ Although Riddle's testimony did, to some extent, bolster Blair's alibi, it did not render that alibi air-tight. Riddle testified that she recalled seeing Blair in the license office between 11:00 a.m. and 12:30 p.m. Thus, Blair could have been in Riddle's office as early as 11:00 a.m., stayed for several minutes, and still have had time to arrive at the site of the abduction around 11:45 a.m. Thus, though Riddle's testimony certainly did not help the defense, neither did it completely destroy its trial strategy. Secondly, Riddle was not the only person who confirmed Blair's alibi. Blair's girlfriend at the time, Lynn Thompson, testified that she accompanied Blair to the license office at the time Blair claimed. Lastly, and most importantly, there was an abundance of evidence against

Appellant upon which the jury could base its verdict. Appellant owned the gun which killed Mr. Harris, there was gunshot residue on both his hands, he was seen in Harris's car shortly after the abduction, his fingerprints were found in the car and on one of the coin wrappers taken from the victim, the victim's watch was found in the back seat of the police cruiser that transported Appellant to the police station, and, last but not least, Appellant confessed to the crime in front of police officers.

■ Under the *Strickland* standard, in deciding whether counsel's performance prejudiced the defendant, a reviewing court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. Although *Strickland* recognizes that in some cases a single error can have such "a pervasive effect on the inferences to be drawn from the evidence" that the "entire evidentiary picture" is altered, we do not believe that is the case here. *Id.* at 695–96, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. In order to believe Appellant's version of events rather than Blair's, the jury would have had to conclude not only that Riddle was lying (or mistaken), but also that Blair, Lynn Thompson, Blair's mother, and the several police officers who heard Appellant's confession were all lying as well. In light of all of the evidence presented at trial, we believe counsel's failure to impeach Riddle's testimony or to present Faye Thomas as a witness did not alter the entire evidentiary picture in Appellant's trial.

■ Appellant next contends that counsel was ineffective in failing to demonstrate to the jury that the pants Blair's mother claimed Appellant was wearing shortly after the murder were too small for Appellant. Because the pants contained a stain of soil that matched soil found at the crime scene, the pants were crucial to the Commonwealth's case. By demonstrating the pants did not fit Appellant, counsel could have overcome the prosecution's attempt to link Appellant to the crime scene with physical evidence, and at the same time could have impeached Blair's mother's testimony.

We believe counsel's failure to put on this demonstration was a strategic decision given the evidentiary value of such a demonstration. Even if the demonstration had proven that the pants were too small for Appellant five years after the crime, this would have been of minimal evidentiary value. Instead, during closing argument, counsel urged jurors to compare for themselves the size of the pants the Commonwealth claimed Appellant was wearing when he committed the murder with the pants he was wearing at the time he was arrested. This comparison made the same point the demonstration would have made, and in fact was much more forceful than a comparison with Appellant's waist-size five years after the crime.

■ Appellant next contends counsel was ineffective in failing to present two additional witnesses to testify they heard Blair confess he had set up Appellant for the crime which he, Blair, had committed. We find counsel's performance on this issue to fall within the realm of reasonable trial strategy. It was not unreasonable for counsel to choose not to call Ronald Daugherty to the stand, given that an investigator's memo indicated that Daugherty did not actually hear Blair make the incriminatory statement, but rather, heard a prison trusty relate this information in the form of a message from Blair. Thus, Daugherty's testimony would simply have been hearsay. Likewise, it was not unreasonable for counsel to fail to find and present Tonya Benet, a former girlfriend of Blair's. Counsel presented seven witnesses to testify to the same information Benet would have testified to. Any additional testimony on this issue would have been merely cumulative, and the decision to forego a search for additional witnesses to bolster this point was strategically sound.

■ Appellant's next claim of ineffective assistance is based on counsel's failure to introduce the same evidence of intoxication as was introduced in Appellant's first trial, to wit: testimony of an attorney who saw needle tracks in Appellant's arms following his arrest, and photographs of those needle tracks. Appellant argues counsel's failure to present this evidence resulted in the trial court's denial of a manslaughter instruction and in the lack of evidence of intoxication as

a mitigator during the penalty phase of the trial.

Although this evidence was indeed presented at Appellant's first trial, counsel's failure to present this same evidence during the second trial in no way constitutes proof of ineffectiveness. "RCr 11.42 motions attempting to denigrate the conscientious efforts of counsel on the basis that someone else would have handled the case differently or better will be accorded short shrift in this court." *Penn v. Commonwealth*, Ky., 427 S.W.2d 808, 809 (1968).

Evidence relating to Appellant's intoxication was presented in the second trial through the introduction of Appellant's own testimony and the testimony of Don Whobrey, both of whom told the jury about Appellant's drug use on the night before the murder. At the RCr 11.42 hearing, one of Appellant's attorneys testified that he chose not to use the photographs because they were of poor quality and did not clearly indicate the presence of track marks on Appellant's arms. Counsel testified he felt confident the evidence of intoxication presented at the second trial was more on point than that presented in the first trial. This was a valid strategic decision on the part of counsel, and we will not second-guess that decision now with the benefit of hindsight.

■ Appellant next alleges counsel should have done more during the guilt phase to exclude the introduction of evidence that Appellant had pled guilty to a felony.[1] Appellant asserts that counsel failed to make the proper argument in their attempt to exclude this evidence, and that if they had made the proper argument (undue prejudice in the penalty phase), the evidence would have been excluded. We find this argument to be entirely speculative and completely without merit, especially given the fact that on direct appeal, this Court upheld the trial court's determination that the introduction of evidence of the burglary conviction and references to Appellant's previous incarceration and time spent on death row [2], did not unduly prejudice Appellant's ability to receive a fair trial during the penalty phase. *Moore v. Commonwealth*, 771 S.W.2d 34, 37–38 (1989). Appellant argues that even if this Court finds counsel was not ineffective for failing to prevail in their attempt to exclude this evidence during the guilt phase, we must nonetheless find counsel ineffective for failing to request, during the penalty phase, an admonition to the jury to disregard the evidence of conviction presented in the guilt phase. Although we cannot determine from the briefs why counsel did not seek such an admonition, it seems highly probable that counsel chose not to draw attention to the conviction by reminding the jurors of its existence, then instructing them to disregard it. The failure to request the admonition was not so unreasonable as to fall outside of the realm of reasonable professional assistance.

■ Appellant makes a similar argument in regard to counsel's failure to object to the testimony of Appellant's aunt, Florine Shoptaw. Upon the prosecution's request, Shoptaw read a portion of a previous statement she had made to the police regarding Appellant's tendency to tell "tall tales to get himself out of trouble." Counsel testified during the post-conviction hearing that he did not know why he did not object to this testimony as improper comment upon the credibility of the defendant. A review of Shoptaw's testimony reveals the likely answer. After reading the sentence and confirming that she had made the statement, Ms. Shoptaw went on to angrily explain how the officer who recorded her statement took the comment completely out of context and manipulated her words to serve his own purposes. We believe counsel, in all likelihood, decided that Shoptaw's own

---

1. This evidence was used to impeach Appellant when he testified on his own behalf. The felony conviction was based on a burglary which Appellant and Blair committed together and which Appellant pled guilty to after his arrest for the murder of Mr. Harris.

2. In our opinion, we referred to this evidence as "information that would not be admissible at the sentencing phase." *Moore v. Commonwealth*, 771 S.W.2d 34, 37 (1989). Although evidence of "prior convictions" is admissible in the sentencing phase of a trial, the trial judge ruled the evidence of the burglary conviction would not be admissible in the sentencing phase because it was not a "prior" conviction, but instead occurred after the murder.

protestations were more helpful to Appellant's case than would be any objection to the statement, which would have disrupted Shoptaw's testimony and placed unnecessary emphasis on the objectionable testimony. Counsel's failure to object was strategically sound.

■ Appellant next contends counsel should have requested a directed verdict on the mitigating factor of "no significant history of prior criminal activity." As noted by the Sixth Circuit in *McQueen v. Scroggy*, 99 F.3d 1302, 1331 (6th Cir.1996), "[T]here is no evidence that Kentucky law considers it appropriate, and there is no case holding that the United States Constitution requires (or even allows) directed verdicts on mitigating circumstances." We will not find counsel to have been ineffective for failing to request something which has, to our knowledge, never before been authorized by Kentucky law.

■ Appellant next raises a litany of complaints about the way counsel handled the penalty phase of his trial. Appellant points to approximately 95 letters written by friends and acquaintances on behalf of Appellant, which counsel failed to investigate in an effort to seek character witnesses to testify during the penalty phase. Appellant also complains that his attorneys, by their own admission during the post-conviction hearing, spent only two to three percent of their time preparing for the penalty phase of trial, as compared to the 97–98% of the time spent in preparation of the guilt phase. He complains counsel failed to present a psychologist to testify about Appellant's lack of capacity to appreciate the criminality of his conduct, or a social worker to testify about Appellant's sad family background and his resulting emotional state and dependance on drugs and alcohol. In short, Appellant, with the benefit of hindsight, indignation, and over a decade to ponder counsel's actions at trial, now seeks to convince this Court that counsel was ineffective simply because they did not pursue every conceivable line of strategy in preparation for the penalty phase.

Counsel consulted with Appellant and others about Appellant's background before the penalty phase. They presented seven witnesses who testified on Appellant's behalf.

They employed the services of a psychologist to evaluate Appellant and to testify on his behalf, but, after learning the psychologist was a fraud, decided not to call him at trial. Despite Appellant's attempts to portray counsel as having done next to nothing to represent him during the penalty phase, he has failed to overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. It is clear that counsel's performance was adequate, and in no way fell below an acceptable level of professional judgment. Appellant was entitled to a fair trial under the law, and that is what he received.

■ Appellant next argues counsel was ineffective in failing to move to disqualify the prosecutors from the case. Appellant boldly states that the Jefferson County Commonwealth Attorney's office was merely a "marionette of the police department" and was unable to impartially prosecute the case due to the fact that the murder victim was the father of a Jefferson County police officer. According to counsel's testimony during the post-conviction hearing, the prosecutor's office was entirely unwilling to consider negotiating a plea bargain because the police department was insisting it pursue the death penalty. Thus, according to Appellant, the need to move for the prosecutor's disqualification was clear, and counsel's failure to do so ultimately resulted in Appellant's death sentence. Counsel testified in the post-conviction hearing that it never occurred to them to make such a motion. Appellant cites this oversight as clear evidence of counsel's defective performance.

Here again, Appellant is attempting to second-guess counsel's every move (or failure to move) several years after his conviction. Again we reiterate that we will not turn back the clock in order for Appellant to re-practice a case which was competently, though unsuccessfully, practiced the first time around. Furthermore, we note that Appellant's allegation of ineffectiveness presumes that if counsel had indeed made the motion to dis-

qualify, the motion would necessarily have been granted. This presumption is purely speculative. Prosecutors have broad discretion regarding what crime to charge, what penalty to seek, and whether to negotiate or accept plea bargains. The Commonwealth is under no duty to accept an offer of a plea in exchange for a sentence less than death. Additionally, although there may have been some pressure on the prosecution to seek the highest penalty in this case, the reality of police-prosecutorial cooperation dictates that this pressure would have existed for any subsequent prosecutor assigned to the case. Consequently, there is no way to assume that, had the motion been made and granted, Appellant would have had any more success in his attempt to negotiate a plea bargain with subsequent prosecutors assigned to the case.

■ Appellant next criticizes counsel's failure to renew an objection to the presence of uniformed police officers in the courtroom. In a pre-trial conference, counsel moved to exclude from the courtroom police officers in uniform. The motion was denied, but the trial court noted that it would wait to see if the presence became a problem. Throughout the trial, there were at various times as many as ten uniformed officers among the spectators in court. Counsel did not renew the objection to the presence of uniformed officers. Counsel explained this failure in the post-conviction hearing by stating that he "just got busy and forgot about it." It seems likely that counsel forgot to renew the objection, precisely because there was no need to renew it. If the presence of uniformed officers had been so obtrusive or overwhelming as to unduly prejudice the jury, counsel most likely would have noticed it and would have renewed the objection. This likelihood is supported by the fact that the trial judge, who was aware of the potential for undue prejudice, did not find the presence of uniformed officers to be a problem.

■ Appellant next alleges that trial counsel performed a woefully inadequate general voir dire, and that this deficient performance was further compounded by counsel's later failure to strike certain jurors from the jury venire. Appellant lists several questions he believes counsel should have asked during both general and individual voir dire, and contends counsel's failure to inquire into these topics amounted to ineffective assistance. The general voir dire in this case comprised 132 pages of transcript, and the individual voir dire consisted of 987 pages. Both of Appellant's trial attorneys had much experience conducting both general and individual voir dire. Although Appellant would like it to be so, counsel could not possibly have asked every conceivable question which might reveal a potential bias of venire persons. The record reflects that counsel asked several thought-provoking questions directed at discovering any bias or inability to fairly judge the evidence presented. Counsel's performance was well within the range of acceptable professional judgment.

As to Appellant's complaint that counsel was ineffective in failing to strike six jurors from the venire, we have reviewed the responses of those six jurors to both general and individual questioning and we believe all satisfactorily conveyed that they would not feel biased against the defendant based on their tenuous connections to people working in law enforcement. The defense has not overcome the strong presumption that counsel's failure to strike these jurors was a sound strategic decision.

■ Appellant next complains counsel was ineffective for failing to raise several unpreserved claims of error in Appellant's direct appeal of his conviction. Appellate counsel is not ineffective for failing to raise every conceivable issue on appeal. The United States Supreme Court stated in *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434, 445 (1986), "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." (Citation omitted). We agree entirely.

Appellant's two final arguments do not accuse counsel of ineffective assistance, but rather, quarrel with the circuit court's ruling on the RCr 11.42 and CR 60.02 motions. As to the ruling on the 11.42 motion, Appellant

argues that the trial judge improperly permitted opinion testimony about the reputation and abilities of trial counsel, and that the judge then improperly considered trial counsel's good reputation and wealth of experience in criminal matters when it found counsel rendered effective assistance to Appellant.

A review of the RCr 11.42 hearing reflects the trial judge was concerned not with the witnesses' opinions about trial counsel's reputation, but with the specific facts regarding counsel's representation of Appellant at trial. Furthermore, although the court, at the outset of its opinion denying the RCr 11.42 and CR 60.02 motions, specifically noted that Appellant's trial attorneys were experienced lawyers and that one of the attorneys was well known for his experience in death penalty cases, the court later stated that its purpose in noting counsel's reputation was to mitigate any skepticism about ineffectiveness claims against counsel. Contrary to Appellant's contention, we believe the trial judge fairly weighed each of Appellant's allegations of ineffective assistance, and did not allow his awareness of counsel's reputation to influence his ultimate decision.

■ Appellant also argues the trial judge applied the wrong legal standard in deciding the RCr 11.42 motion, in that he concluded counsel's errors did not "cause the jury's verdict." The proper standard, under *Strickland*, is that "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Although the court indeed concluded its opinion by stating that counsel's errors did not cause the jury's verdict, after reviewing the opinion as a whole, we believe the judge adhered to the standard of review mandated in *Strickland*. In any event, even if we were to conclude the trial judge applied the wrong standard, it is our opinion, as evidenced by our discussion above, that application of the correct standard would have led to the same result. Appellant's allegations of ineffective-

ness have in no way undermined our confidence in the outcome of his trial.

■ Lastly, Appellant argues the trial court erred in denying his motion for a new trial pursuant to RCr 10.02 and CR 60.02 because the newly discovered evidence introduced at the hearing compels a finding that Blair committed the crime for which Appellant was framed and wrongfully convicted. The "new" evidence which Appellant insists compels such a finding consists of three witnesses who claim to have heard Blair confess, either directly or obliquely, to the murder of Mr. Harris. At trial, Appellant presented seven witnesses who testified they had heard Blair make similar confessions. Because the testimony of these newly discovered witnesses is merely cumulative and adds nothing new to the body of fact which was before the jury which convicted Appellant, it fails to establish an appropriate basis for granting a new trial. *Bradley v. Commonwealth*, Ky., 347 S.W.2d 532 (1961); *Commonwealth v. Newsome*, Ky., 296 S.W.2d 703 (1956).

Accordingly, for the reasons set forth above, the denial of Appellant's RCr 11.42 and CR 60.02 motions is affirmed.

All concur.