# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: SEPTEMBER 27, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

DATE 10/18/18 Kim Redmon, DC

2017-SC-000562-MR

CHRISTOPHER HILL          APPELLANT

ON APPEAL FROM KENTON CIRCUIT COURT

V.          HONORABLE KATHY LAPE, JUDGE
NO. 12-CR-00886

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Christopher Hill, was implicated in the murder and robbery of Bret Thornberry by his co-defendant, Romello Rice. On November 29, 2012, a Kenton County Grand Jury indicted Hill on one count of murder and one count of robbery in the first degree. On December 6, 2012, a superseding indictment repeated those charges. Hill was represented by two lawyers from the Department of Public Advocacy ("DPA").

Hill was wearing an ankle monitor at the time of Thornberry's robbery and shooting. The record shows that the ankle monitor was not at the crime scene on the day of Thornberry's shooting, (TR 198). However, the Commonwealth alleged that Hill had removed the monitor before he committed the crimes.

During discovery, defense counsel filed several motions on Hill's behalf, including motions: to suppress Rice's inculpatory statements about Hill; to compel the Commonwealth to turn over other statements made by Rice; and to exclude Rice as a witness. However, the trial court denied all of those motions.

On April 9, 2013, the trial court issued an order setting the trial date for January 14, 2014. On December 4, 2013, defense counsel filed a continuance motion. Therein, defense counsel cited insufficient time to interview witnesses and thoroughly inspect data from Hill's ankle monitor. The trial court denied defense counsel's continuance motion.

On January 10, 2014, Hill accepted a plea agreement from the Commonwealth and entered a guilty plea on both counts. In the agreement, the Commonwealth offered Hill the minimum 20-year sentence for each crime, to run concurrently. During the hearing on his guilty plea, Hill stated under oath that he participated in the robbery. Initially, he did not answer questions from the court when pressed to describe his participation, but, after speaking briefly with his attorney, Hill stated that he participated in the robbery and shot Thornberry. At that time, he did not voice any concern about the effectiveness of his legal representation.

On February 10, 2014, the trial court held its initial sentencing hearing but, by agreed order, the sentencing hearing was continued to March 24, 2014.

On February 14, 2014, Hill spoke with defense counsel, whose records noted, "Chris wants me to tell the prosecutor that Face was the shooter and he copped [a plea deal because] he was scared of Face." Notably, on March 14,

2014, Rice spoke with Hill's attorney. Rice told her that Hill was not his accomplice. Instead, he stated he committed the crimes with Adam "Face" Curtly, but laid blame on Hill because he was afraid of "Face," who had a grisly reputation.

At the beginning of the sentencing hearing, against defense counsel's advice, Hill presented a pro se motion to withdraw his guilty plea. Hill asserted that he did not commit the crimes charged, stating that he only pled guilty to "get it over with," (VR 3/24/14 at 2:05:59), and "because my lawyer said it was in my best interest." (*Id.* at 2:07:30). The trial court denied Hill's motion to withdraw his guilty plea, entered judgment of conviction on both counts, and sentenced Hill to twenty years' imprisonment on each count to be served concurrently in accord with the plea agreement.

On February 4, 2015, Hill filed a RCr 11.42 motion pro se, seeking to vacate his conviction. Hill claimed that defense counsel was ineffective for failing to adequately represent him prior to his plea agreement and during his plea withdrawal. As part of his motion, Hill attached an affidavit from Rice attesting that Hill had nothing to do with the shooting or robbery. Hill claimed that defense counsel's failure to interview Rice before he made his guilty plea and to follow up on Rice's exculpatory testimony was ineffective assistance.

The DPA was again appointed to represent Hill. His new trial counsel filed a supplemental RCr 11.42 motion on July 12, 2016.

On February 1, 2017, the trial court found that Hill's prior attorney's conflict of interest surrounding his pro se motion to withdraw his guilty plea

3

required his sentence to be vacated. Correspondingly, the court found that he was entitled to be represented by different counsel at a hearing on his guilty plea withdrawal motion. Accordingly, the trial court's order denying the motion to withdraw his guilty plea was set aside and a new hearing was scheduled to be held on that motion.

On August 10, 2017, a new hearing was held on Hill's motion. Hill testified that defense counsel had informed him that his case was her first murder trial. He testified that counsel's lack of preparation—evidenced by her continuance motion and general inexperience—had a major impact on his decision to plead guilty. Hill claimed defense counsel encouraged him to plead because Rice had implicated him and had reached a plea deal to testify against him. He alleged that defense counsel coerced him to plea out of fear that the Commonwealth had a strong case against him and that he could face the death penalty.

Furthermore, Hill stated that he asked defense counsel to speak with Rice before deciding to enter a guilty plea but claimed they would not. Hill felt that Rice's decision to speak with defense counsel on March 14, 2014, at which point Rice stated that he had implicated Hill out of fear of "Face," meant Rice would not have testified against him at trial after all—and, but for Rice's damning testimony, he would not have pled guilty.

However, Hill did not call his former attorneys or Rice as witnesses during his hearing. Instead, he presented his own testimony and the taped

4

interview between defense counsel and Rice, wherein Rice recanted his implication of Hill and stated "Face" actually shot the victim.

During cross-examination concerning the taped interview, Hill conceded that he and Rice were housed in the same correctional facility prior to Rice's interview. Hill also conceded that he saw a handwritten letter from Rice during discovery—prior to his guilty plea—that implicated him in the crimes. He further conceded that he never told the trial judge that he lacked confidence in his attorneys or that he pled out of fear of "Face" or his attorneys' alleged deficient preparation for trial.

On August 14, 2017, the trial court issued an order denying Hill's motion to withdraw, finding that his plea was made voluntarily. In its order, the trial court noted, "This court finds that Defendant offered nothing to convince this court that his desire to withdraw his guilty plea was anything other than a change of heart after the fact." (TR 448). Therefore, the trial court affirmed its prior judgment of guilt based upon his guilty plea.

On October 6, 2017, the trial court sentenced Hill to 20 years' imprisonment. He now appeals his judgment and sentence as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution.

## Analysis

Because "'the trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty' . . . this Court reviews a trial court's ruling on a defendant's motion to withdraw his guilty plea only for abuse of discretion by 'ascertain[ing] whether

5

the court below acted erroneously in denying that appellant's pleas were made involuntarily.'" *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001) (internal citations omitted). Abuse of discretion occurs when "the trial judge's decision [is] arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

"A guilty plea is valid only when it is entered intelligently and voluntarily." *Bronk*, 58 S.W.3d at 486. "At any time before judgment the court may permit the plea of guilty . . . to be withdrawn and a plea of not guilty substituted." RCr 8.10. When a defendant alleges that his guilty plea was involuntary, then a hearing must be held to determine whether the plea was voluntary. *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002).

> In cases where the defendant disputes his or her voluntariness, a proper exercise of this discretion [under RCr 8.10] requires trial courts to consider the totality of the circumstances surrounding the guilty plea and juxtapose the presumption of voluntariness inherent in a proper plea colloquy with a *Strickland v. Washington* inquiry into the performance of counsel . . . the trial court must evaluate whether errors by trial counsel significantly influenced the defendant's decision to plead guilty in a manner which gives the trial court reason to doubt the voluntariness and validity of the plea.

*Bronk*, 58 S.W.3d at 486-87.

In reference to the *Strickland* inquiry, this Court has recognized that:

> A showing that counsel's assistance was ineffective in enabling a defendant to intelligently weigh his legal alternatives in deciding to plead guilty has two components: (1) that counsel made errors so serious that counsel's performance fell outside the wide range of professionally competent assistance; and (2) that the deficient performance so seriously affected the outcome of the plea process

6

that, but for the errors of counsel, there is a reasonable probability that the defendant would not have pleaded guilty, but would have insisted on going to trial.

*Bronk*, 58 S.W.3d at 486-87 (citations omitted).

The crux of Hill's argument is that defense counsel was not prepared for trial, demonstrated by her December 4, 2013 motion for a continuance, which caused him to plead guilty. As examples of her alleged ineptitude, Hill testified as to defense counsel's decision not to interview Rice before trial; her failure to interview other witnesses; her failure to thoroughly inspect data from his ankle monitor; and her general lack of experience with murder trials.

Rice was a co-defendant in the robbery and murder of Thornberry, whose admission implicated Hill as his accomplice. Rice was represented by counsel and took a plea deal but had yet to be sentenced leading up to Hill's trial. As part of his plea deal, Rice had agreed to testify that he and Hill had robbed Thornberry and that Hill was the shooter.

Given Rice's participation as the Commonwealth's primary witness against her client, defense counsel had no reason to believe Rice's testimony would help her client. Whether Rice and Hill had truly pled guilty in order to avert the wrath of "Face" or the pair concocted the new story after both pled guilty, defense counsel had no reason to suspect that Rice would about-face prior to trial and change into a defense witness.

In fact, defense counsel made several attempts to protect her client from Rice's testimony. For instance, she moved the trial court: to disallow Rice's incriminating statements; to permit discovery of further statements made by

7

him to the Commonwealth; and to bar him from testifying as a witness during Hill's trial.

Defense counsel adequately conferred with her client and kept him abreast of information about his case. She discussed the evidence and discovery materials with Hill. She made attempts to prevent his cohort from testifying. She moved the court for a continuance to allow for more discovery. After her efforts were unsuccessful, she informed Hill of her apprehension about the strength of the Commonwealth's evidence against him and her concern about his possible sentence if he was convicted of robbery and murder—potentially the death penalty or life imprisonment.

Hill cites *Commonwealth v. Tigue*, 459 S.W.3d 372, 393 (Ky. 2015), for the proposition that "pressure tactics" used by counsel to convince a client that pleading guilty is in the client's best interest are relevant to the totality of the circumstances surrounding the client's decision to enter a plea agreement. Even though *Tigue* may stand for such a proposition, we find no such "pressure tactics" here. Defense Counsel was candid with her client about the merits of his case. Other than Hill's contention, the record does not indicate any attempts to pressure or coerce him into taking a plea deal. It is proper for defense attorneys to discuss the potential outcome of trials with their clients and to speak with them about whether plea deals may be in their interest.

Furthermore, the fact that she was preparing for her first murder trial did not make her representation per se ineffective. Moreover, Hill was

8

represented by both defense counsel and her supervisor. He had the benefit of representation from both attorneys.

Rather than arguing that defense counsel made serious errors falling outside the realm of competent legal representation, Hill merely claims that she should have used a different discovery strategy regarding the witnesses she interviewed. "'[A]ttempting to denigrate the conscientious efforts of counsel on the basis that someone else would have handled the case differently or better will be accorded short shrift in this court.'" *Moore v. Commonwealth*, 983 S.W.2d 479, 485 (Ky. 1998) (quoting *Penn v. Commonwealth*, 427 S.W.2d 808, 809 (Ky. 1968)).

"[A] motion to withdraw a guilty plea made before entry of the final judgment of conviction and sentence is a 'critical stage' of the criminal proceedings to which the right to counsel attaches." *Tigue*, 459 S.W.3d 372 at 384. Given the conflict that arose when Hill moved pro se for his guilty plea to be withdrawn against defense counsel's advice, the trial court appropriately vacated its previous judgment and appointed Hill new counsel to represent him on his motion to withdraw his guilty plea. During the hearing held on his motion, the trial court allowed Hill to present evidence in support of his claim that his plea was involuntary. Accordingly, we find that the trial court did not abuse its discretion in reviewing the record, determining Hill voluntarily pled guilty, and denying Hill's motion to withdraw his guilty plea.

## **Conclusion**

For the foregoing reasons, we hereby affirm the judgment of the Kenton Circuit Court.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Erin Hoffman Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General