RENDERED: MAY 28, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1255-MR

MICHAEL B. FOWLER                                                     APPELLANT

|      | APPEAL FROM BUTLER CIRCUIT COURT |
|------|-----------------------------------|
| v.   | HONORABLE DAN KELLY, SPECIAL JUDGE |
|      | ACTION NOS. 15-CR-00011 AND 15-CR-00119 |

COMMONWEALTH OF KENTUCKY                                               APPELLEE

<u>OPINION AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING</u>

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND MCNEILL, JUDGES.

LAMBERT, JUDGE: Michael B. Fowler appeals from the Butler Circuit Court's denial of his Kentucky Rule of Criminal Procedure (RCr) 11.42 post-conviction motion. We agree with Fowler's claim that his attorney was ineffective for failing to object when a physician vouched for the allegations of sexual abuse made by a minor, and that claim cannot be resolved without conducting an evidentiary hearing, so we reverse the trial court's summary denial of that claim and remand

for an evidentiary hearing as to that claim. We affirm the trial court's denial of the remainder of Fowler's claims.

## I. Relevant Factual and Procedural History

For consistency's sake, we quote the relevant underlying history as related by the Kentucky Supreme Court in its opinion affirming Fowler's convictions on direct appeal:

> Fowler became acquainted with . . . Nicole Waldecker. According to Waldecker, the two entered the rehabilitation program at about the same time, became acquainted, began dating, and by the end of the program wanted to move in together. In late August, Waldecker moved back into the Morgantown home of her mother . . . and step-father, the caretakers during her treatment of her two children: a daughter, "Betty,"[1] who was born in September 2008 and who was thus seven years old at the time of trial in March 2016, and a then two-year-old son. After the completion of Waldecker's drug rehabilitation, she, Betty, and her son moved into an apartment. Fowler lived with Waldecker and her children. . . .
>
> . . . .
>
> Several months into living together, Fowler and Waldecker relapsed and began using drugs together. Later in January 2015, when Betty asked if she could go live with her grandmother, Waldecker believed that Betty was upset because of her drug abuse. After Betty went to stay with her grandmother in mid-January 2015, Waldecker and Fowler had an argument that turned into an altercation. Fowler blackened her eyes and bruised three of her ribs, injury enough to land her briefly in the hospital and Fowler in jail. After Fowler pled guilty to

---

[1] "Betty" is a pseudonym used to help protect the child's privacy.

fourth-degree assault and was released from jail, he returned to the home, where he argued with Waldecker and with some of her family members, which resulted in the issuance of a Domestic Violence Order against him barring him from the residence.

Afterwards, Betty returned to live with her mother. When Betty came home, Waldecker asked why she had gone to her grandmother's and why she had returned. During this conversation, Waldecker learned of Fowler's abuse of Betty and she contacted the authorities. . . . In February 2015, the Butler County grand jury charged Fowler with ten counts each of first-degree rape, first-degree sodomy, and first-degree sexual abuse against Betty . . . . [The charges proceeded to a March 2016 jury trial.] [S]even-year-old Betty testified that during the period she, her mother, her baby brother, and Fowler lived together in the Morgantown apartment, Fowler performed a number of acts of a sexual nature on her and had her perform similar acts on him. Although Betty did not have an adult vocabulary for what she was describing, with the help of some leading questions by the prosecutor, Betty stated in effect that Fowler subjected her to incidents of vaginal intercourse, vaginal touching (Fowler placing his penis on the outside of Betty's vagina), and vaginal/oral sodomy. She also testified to occasions when Fowler placed his penis in her mouth, occasions when he had her touch his penis with her hands, and occasions when he kissed her on the mouth.

. . . .

. . . [T]he jury found Fowler guilty of first-degree rape, first-degree sodomy (three counts), and first-degree sexual abuse (five counts). The jury returned not guilty verdicts with respect to three other instructions asking whether it was convinced that Fowler had committed an act of anal sodomy in the bathroom and two such acts in the mother's bedroom . . . . As to penalty, the jury

-3-

recommended a sentence of twenty-five years for first-degree rape and for each of the three first-degree sodomy offenses and terms of seven years for each of the five first-degree sexual abuse offenses. Further, the jury recommended that the terms run concurrently for a maximum term of imprisonment of twenty-five years. The trial court sentenced Fowler in conformance with the recommendation.

*Fowler v. Commonwealth*, No. 2016-SC-000333-MR, 2018 WL 1418275, at *1-3 (Ky. Mar. 22, 2018) (footnotes and some paragraph breaks omitted).

Several months after the Kentucky Supreme Court affirmed his convictions and sentence, Fowler filed his *pro se*, handwritten RCr 11.42 motion. The trial court denied the motion via an extremely terse order without having first conducted an evidentiary hearing. Fowler then filed this appeal.[2]

**II. Analysis**

*A. Issues Presented*

Fowler's brief raises three main, somewhat interrelated, claims of ineffective assistance of counsel.[3] First, he contends counsel was ineffective for failing to conduct a pretrial investigation regarding the expert medical evidence. Second, he contends counsel was ineffective for failing to object to bolstering

---

[2] Even though Fowler was sentenced to twenty-five years' imprisonment, we have jurisdiction over his RCr 11.42 appeal. *Cardine v. Commonwealth*, 102 S.W.3d 927 (Ky. 2003).

[3] By not raising them here, Fowler has waived or abandoned any other claims in his RCr 11.42 motion. *See, e.g.*, *Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 249 S.W.3d 174, 187-88 (Ky. App. 2006).

testimony given by the Commonwealth's medical expert and to the Commonwealth's questions to Fowler about some prior misdeeds. Finally, Fowler contends counsel should have argued that Betty's allegations she had been abused by another person were admissible under Kentucky Rule of Evidence (KRE) 412(b)(1)(C).

### B. Standards of Review

Since the trial court did not hold an evidentiary hearing "our review is limited to determining whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Commonwealth v. Searight*, 423 S.W.3d 226, 231 (Ky. 2014) (internal quotation marks and citations omitted). A trial court must hold an evidentiary hearing on an RCr 11.42 motion "only when there is 'a material issue of fact that cannot be determined on the face of the record.'" *Id.* at 228 (quoting RCr 11.42(5) (other citation omitted)). A court may "summarily" deny "motions asserting claims refuted or otherwise resolved by the record." *Commonwealth v. Pridham*, 394 S.W.3d 867, 874 (Ky. 2012). Also, no hearing is required if "the allegations, even if true, would not be sufficient to invalidate [the] convictions." *Searight*, 423 S.W.3d at 228 (internal quotation marks and citation omitted).

The United States Supreme Court has emphasized that courts reviewing claims of ineffective counsel "must indulge a strong presumption that

-5-

counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington,* 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). Fowler must show both that counsel's performance was deficient and the deficiency prejudiced the defense. *Searight*, 423 S.W.3d at 230 (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064). To show deficient performance, Fowler must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, Fowler "must overcome the strong presumption counsel's assistance was constitutionally sufficient or 'might be considered sound trial strategy'" bearing in mind that "'[s]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]'" *Koteras v. Commonwealth*, 589 S.W.3d 534, 541 (Ky. App. 2018) (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066). To show prejudice, Fowler must show the deficient performance led to a "fundamentally unfair proceeding with an unreliable result." *Id.* (citing *Strickland*, 466 U.S. 668, 104 S.Ct. 2052).

   *C. Counsel's Failure to Object to Dr. Blackerby's Vouching Testimony Requires an Evidentiary Hearing*

   Dr. Jeffries Blackerby, who examined Betty, testified that he found no physical signs she had been abused. But he nonetheless testified without objection

-6-

that it was "quite probable that the child's [Betty's] story was true and the fact that the examination was normal does in no way rule out the fact that this happened." Dr. Blackerby also testified that he had no indication Betty was being told what to say.

Fowler raises two interrelated arguments about counsel's handling of Dr. Blackerby's testimony. First, he contends counsel was ineffective for not obtaining a medical expert to rebut it. Second, he contends counsel was ineffective for failing to object to it.

"It is well-settled that a witness cannot vouch for the truthfulness of another witness. In the context of child sex abuse cases, this Court has repeatedly held that no expert, including a medical doctor, can vouch for the truth of the victim's out-of-court statements." *Hoff v. Commonwealth*, 394 S.W.3d 368, 376 (Ky. 2011) (citations omitted). Our Supreme Court later reiterated that "physicians may give an opinion concerning their patients' medical diagnosis, but they may not give an opinion as to the truthfulness of their patient." *King v. Commonwealth*, 472 S.W.3d 523, 531 (Ky. 2015). Thus, by testifying that it was "quite probable that the child's story was true[,]" Dr. Blackerby impermissibly vouched for the veracity of Betty's allegations.

We disagree with the Commonwealth's argument that Dr. Blackerby's testimony stayed within the boundaries imposed by *Hoff*. In *Hoff*, when a

physician was asked if the injuries to the victim's hymen were "normal for a child her age who had not had sexual intercourse[,]" the doctor first stated the injuries could be caused by methods other than sexual abuse before adding:

> This is consistent with penetrating vaginal trauma of undetermined age, but also consistent with the history the child gave me. And I have no reason not to believe this child. So the answer is: is it normal for a twelve-year-old child to have this? I don't believe so. Is it consistent with having sex? Yes, it is. Is there any other explanation? There might be. But is it consistent with the facts as laid out? Yes, it is. Is it within reasonable medical probability to say that the most likely answer is what has been laid before me? I believe that it is.

*Hoff*, 394 S.W.3d at 375. Our Supreme Court deemed the doctor's relating that the victim's injuries were consistent with having sex and the history she had given proper but held "language that interjects the issue of 'believing' [the victim]" and "a statement that he could say with some certainty – reasonable medical probability – that what [the victim] said happened to her was the true cause of her injuries" was improper. *Id.* at 376.

*Hoff* then explains at length what physicians in similar situations may and may not provide in their testimony:

> Given that the physical evidence was inconclusive, Dr. Calhoun could not say, based on that evidence alone, that sexual assault had occurred. The most that he could legitimately say was that based on her history, *whether true or not*, when coupled with the physical findings which were consistent with sexual penetration, there was a reasonable probability that sexual assault had occurred.

The distinction is that this language does not profess a belief in the truth of the victim's claims, but instead leaves that question to the jury. . . .

Here, the language used by the doctor, "And I have no reason not to believe this child," can create an inference that he *does* believe her, and thus by its certainty serves to bolster her testimony. It is not appropriate for medical experts to vouch for the truth of a victim's statement, but only to make a diagnosis under stated conditions, which does not require a personal judgment from the doctor as to whether he believes the patient, unless his belief is a necessary part of determining what treatment to use. Such is not the case here.

. . . .

For these reasons, Dr. Calhoun's testimony was improper. An examining doctor in a child sex abuse case may testify that the child's injuries are consistent with sexual abuse, or consistent with the history given by the child. A doctor may also make a conditional statement that *if he accepts the child's statements as true,* the child's physical injuries and history would lead him to conclude that she has been sexually abused. But the doctor may not testify about the credibility of the child or state that he believes her.

*Id.* at 376-77.

According to the Commonwealth, Dr. Blackerby's testimony here "is the exact phrasing" permitted by *Hoff* – namely, that physicians may testify that "there was a reasonable probability that sexual assault had occurred." *Id.* at 376. But Dr. Blackerby testified that it was "quite probable" that Betty's "story was true[,]" even though there were no physical signs she had been abused. The phrase

used by Dr. Blackerby, "quite probable," is not the "exact" phrase, "reasonable probability," permitted by *Hoff*. Moreover, there were no physical signs of abuse here, unlike in *Hoff*, so Dr. Blackerby could not rely on physical evidence to support his conclusion.

The more troubling testimony, however, is Dr. Blackerby's opining that it was "quite probable" that Betty's "story was true." Betty's "story," of course, was that Fowler had repeatedly abused her. It is thus inarguable that Dr. Blackerby impermissibly vouched for Betty's veracity.

Having determined that Dr. Blackerby impermissibly vouched for Betty, we must determine whether Fowler is potentially entitled to RCr 11.42 relief. Because Betty had no physical signs consistent with sexual trauma, this trial was a credibility contest between Betty and Fowler. Consequently, Dr. Blackerby's bolstering of Betty's veracity was highly prejudicial:

> Any jury is likely to give a weight to the doctor's testimony in this case that is greater than that of family members because of his disinterested position and his expert status. This Court has held that the testimony of a physician repeating a child victim's allegations against a defendant is extremely prejudicial, as is a physician's testimony vouching for the truth of a child's out-of-court statement. This type of testimony by a respected professional gives extra weight to the child victim's testimony and serves to unfairly prejudice the defendant.

*Id.* at 378-79 (citations omitted).

-10-

Given the improper, potentially devastating, nature of Dr. Blackerby's vouching, Fowler's attorney's failure to object is puzzling. But that puzzlement highlights why an evidentiary hearing is required: the record does not explain the lack of objection. If counsel failed to object for non-strategic reasons (*e.g.*, unfamiliarity with *Hoff*), deficiency is plain. And, under these facts, a finding of prejudice would logically follow as it is impossible to conclude that, based on *Hoff*, Dr. Blackerby's vouching – fleeting though it was—did not seriously undercut the basic fairness of a trial at which the only real issue for the jury was whether Betty or Fowler was telling the truth.

However, it is possible counsel refrained from objecting for strategic reasons. For example, counsel could have believed that objecting would have emphasized the vouching. *See, e.g.*, *Moore v. Commonwealth*, 983 S.W.2d 479, 485-86 (Ky. 1998) (holding, albeit on distinguishable facts, that counsel acted "strategically sound[ly]" by not objecting to improper credibility comments in order to avoid emphasizing them, even though counsel was unable to explain the lack of objection). Perhaps counsel believed the best strategy was to remain silent until cross-examination. In fact, on cross-examination, counsel elicited potentially helpful testimony from Dr. Blackerby, such as highlighting the lack of physical trauma to Betty and a concession that children sometimes are told to make false

-11-

accusations of abuse by a parent possessing a hidden agenda.  In sum, an

evidentiary hearing is required to explore why counsel did not object.

D.  *No Hearing Required on Fowler's Failure to Investigate and*
*Failure to Request a Daubert Hearing Claims*

However, we reject Fowler's somewhat related argument that he is

entitled to relief due to counsel's failure to hire a medical expert to counteract Dr.

Blackerby's testimony.  Counsel is not required to retain an expert in every

criminal case, and counsel certainly is not expected to retain an expert to

counteract improper vouching testimony.  Fowler has not shown with the requisite

specificity why an expert was needed or how having an expert would have

impacted the outcome of the trial (*i.e.*, he has shown neither deficient performance

nor prejudice).  Similarly, Fowler contends counsel should have undertaken

additional investigations regarding medical evidence but has not shown what

specific additional investigation counsel reasonably should have undertaken or

how that additional investigation would have impacted the outcome of the trial.

*See, e.g.*, *Hensley v. Commonwealth*, 305 S.W.3d 434, 437 (Ky. App. 2010)

("Hensley has not demonstrated that more investigation by his attorney would have

changed the result.  Thus, [RCr 11.42] relief was properly denied by the trial

court.").

Finally, Fowler has not shown an entitlement to relief based upon his

fleeting assertion that counsel was ineffective for failing to request a hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Fowler has not shown why such a hearing was necessary or how the failure to request a hearing impacted the result of the trial. *See, e.g.*, *Commonwealth v. McGorman*, 489 S.W.3d 731, 740 (Ky. 2016) (denying RCr 11.42 relief because the movant had not "demonstrate[d] that had trial counsel filed a pre-trial *Daubert* motion, the result would have been any different.").

> *E. No Hearing Required Regarding the Commonwealth's Questioning Fowler About Having Committed Previous Thefts*

Fowler next argues the Commonwealth should not have been permitted to inquire about the specific details of his previous criminal convictions, and his counsel was ineffective for not objecting. Under these facts, we conclude no hearing is necessary.

On direct examination, Fowler denied having sexually abused Betty. On cross-examination, the Commonwealth asked Fowler if he was a convicted felon. Fowler admitted he was. The Commonwealth and Fowler then engaged in a colloquy about how Fowler's version of events differed from Betty's; included in Fowler's responses was a statement that he had no reason to lie and had pled guilty to his previous criminal charges. The Commonwealth soon thereafter asked Fowler if he stole two vehicles in 2007 in South Carolina. Fowler responded in the

affirmative. The Commonwealth then asked Fowler if he admitted he stole from a grocery store in South Carolina in 2011. Fowler again responded in the affirmative. The Commonwealth then asked Fowler if he admitted he stole from a Walmart in South Carolina in 2012. Fowler again admitted he had. Then the Commonwealth asked Fowler if the "account" he gave was true, and Fowler responded, "About the stealing and stuff, yeah. Everything I've said since I've been up here is the truth." Fowler's counsel lodged no objections.

Notably, though there was a strong inference of criminal prosecution, the Commonwealth did not ask about any specific criminal convictions. In fact, it is unclear from Fowler's brief if the South Carolina thefts resulted in criminal convictions. KRE 609(a) generally prevents identifying a witness' prior felony convictions unless the witness denies their existence. *See also Commonwealth v. Armstrong*, 556 S.W.3d 595, 600 (Ky. 2018). Consequently, if the South Carolina thefts resulted in felony convictions, the questions were arguably improper; if they resulted in misdemeanor convictions, or no convictions at all, the questions were arguably permissible. *See Allen v. Commonwealth*, 395 S.W.3d 451, 466-67 (Ky. 2013).

Even if we leniently assume, for argument's sake, the questions to have been improper, Fowler is not entitled to RCr 11.42 relief because he has not satisfied the prejudice prong. To show prejudice, Fowler must show "counsel was

so thoroughly ineffective that defeat was snatched from the hands of probable victory." *Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (internal quotation marks and citation omitted). Here, none of the misdeeds about which the Commonwealth inquired was similar to the sexual offenses for which Fowler was on trial, nor did they involve violence. In fact, the exchanges could have served to buttress Fowler's denial of having abused Betty since he forthrightly took responsibility for having committed the thefts and having pled guilty to criminal charges in the past, while adamantly maintaining he did not abuse Betty. It cannot reasonably be determined that the thefts inflamed the jury against Fowler since it acquitted him on several charges and recommended a sentence near the statutory minimum. In short, even if we accept (for purposes of argument) that the questions were improper, we cannot conclude they were so damning that Fowler's counsel's lack of objection snatched defeat from the jaws of victory.

### F. No Hearing Required on Fowler's Rape Shield Law Claims

On direct appeal, Fowler argued that "the trial court erred by preventing him from questioning Betty about an unrelated allegation of prior sexual abuse." *Fowler*, 2018 WL 1418275, at *5. Oddly, Fowler claimed Betty's other allegations of abuse were admissible to "provide an alternate source for the injuries caused by his alleged abuse of Betty." *Id.* Our Supreme Court rejected

Fowler's argument for several reasons, including the fact that Betty had no injuries so Fowler could not have "explain[ed] a non-existent injury." *Id.* at *6.

Now, Fowler contends his trial counsel was ineffective for not arguing Betty's other allegations of abuse were admissible under KRE 412(b)(1)(C).[4] Generally, Fowler contends the other allegations of abuse were admissible to show

---

[4] KRE 412, commonly referred to as the rape shield law, provides in relevant part:

> (a) Evidence generally inadmissible. The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):
>
> > (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.
> >
> > (2) Evidence offered to prove any alleged victim's sexual predisposition.
>
> (b) Exceptions:
>
> > (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:
> >
> > > (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;
> > >
> > > (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and
> > >
> > > (C) any other evidence directly pertaining to the offense charged.

Fowler's appellate counsel attempted to raise the KRE 412(b)(1)(C) issue in his direct appeal, but our Supreme Court refused to consider it because it had not been raised in the trial court by his trial counsel. *Fowler*, 2018 WL 1418275, at *5 n.7.

how Betty learned about the type of sexual acts she accused Fowler of committing. Given Betty's young age, and even though he does not use the phrase, Fowler is essentially arguing counsel should have sought to admit evidence of Betty's other allegations to rebut the "sexual innocence inference theory," under which juries conclude the sexual conduct at issue must have occurred because they presume the young alleged victim would otherwise lack knowledge of sexual matters. *See, e.g.*, *Basham v. Commonwealth*, 455 S.W.3d 415, 418 n.7 (Ky. 2014). Counsel cannot be ineffective for failing to raise an unmeritorious argument, so to determine whether Fowler is entitled to an evidentiary hearing we must assess whether this argument would have been meritorious.

KRE 412(b)(1)(C) is "a safety valve to allow for unanticipated circumstances in which evidence of a victim's prior sexual conduct would be appropriate" which "should be invoked carefully and sparingly, so as not to undermine the rule's objective of protecting against . . . unwarranted attacks on the character of the alleged victim." *Montgomery v. Commonwealth*, 320 S.W.3d 28, 40 (Ky. 2010) (internal quotation marks and citations omitted). But the Court cautioned in *Montgomery* that proper KRE 412(b)(1)(C) evidence should "clearly establish a similar prior incident, one the details of which could account for some particularly striking detail in her accusations[.]" *Id.* at 43.

Counsel did not ask Betty about her other allegations of abuse outside the presence of the jury, such as by avowal, so we cannot discern with absolute certainty their precise nature. But the Commonwealth has consistently asserted that the facts underlying Betty's other allegations are dissimilar to those involving Fowler. *See Fowler*, 2018 WL 1418275, at *5, 7 (noting that "the Commonwealth stated that in the other alleged instance of abuse, the perpetrator used Betty's foot to touch his genitals and that he touched her genitals without causing her injury. . . . It is obvious that Betty's prior claim of sexual abuse, which was not alleged to involve penetration or injury, and which occurred a year before Fowler's assault, had no connection to the case at bar."). Consequently, Betty's other allegations would likely not clearly establish a similar prior incident which would account for the details of Betty's allegations against Fowler. *But see, e.g.*, *Grigsby v. Commonwealth*, No. 2013-CA-2068-MR, 2015 WL 4718894, at *4 (Ky. App. Aug. 7, 2015) (holding, without comparing the similarities in the allegations of prior abuse with those at hand, that it was error to exclude evidence of the alleged victim's "prior experience with sexual abuse to show that [the victim] had prior knowledge, despite her very young age, of certain aspects of sexual conduct.").

In sum, the admissibility of Betty's prior allegations under KRE 412(b)(1)(C) is, at best, uncertain. Indeed, it seems unlikely that argument would have prevailed, given the general tilt against admissibility under KRE 412 and

since our Supreme Court held on direct appeal that the evidence of Betty's other allegations "was at best of slight probative value" but "its likelihood to confuse the jury and embarrass the victim unnecessarily was substantial." *Fowler*, 2018 WL 1418275, at *7 n.8. And Fowler could have pursued his theory that Betty's allegations were a fabrication hatched out of anger after his fight with Betty's mother and the cessation of their romantic relationship via his own testimony and by examining Betty's mother. Counsel may not be deemed ineffective in hindsight for failing to raise an argument of uncertain viability. In short, Fowler has not shown that trial counsel's failure to raise an argument under KRE 412(b)(1)(C) was deficient or that any deficiency was sufficiently prejudicial.

### III. Conclusion

For the foregoing reasons, the decision of the Butler Circuit Court is affirmed in part and reversed and remanded in part with directions to conduct an evidentiary hearing on Fowler's claim that his counsel was ineffective for not objecting to Dr. Blackerby's vouching testimony.

ALL CONCUR.

BRIEFS FOR APPELLANT:

J. Ryan Chailland
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew R. Krygiel
Assistant Attorney General
Frankfort, Kentucky